888 A.2d 472

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ANTHONY NESBITT, DEFENDANT–APPELLANT.

Argued October 25, 2005—Decided January 12, 2006.

*Alison S. Perrone,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

Charged as an accomplice, defendant was convicted by a jury of multiple drug charges including third-degree distribution of a controlled dangerous substance (CDS) on or near school property. During trial the State presented an expert witness who testified

about methods of operation utilized in street-level drug sales. His testimony culminated in a hypothetical question that assumed detailed facts corresponding to the facts adduced at trial. The expert was asked whether the individual described in the hypothetical was "complicit in distributing drugs" and to explain the facts on which he based his opinion. Although defendant did not object to the testimony at the time, he argued on appeal that the testimony impermissibly invaded the province of the jury. Moreover, even if the expert's testimony about drug distribution methods was admissible, defendant contended that the hypothetical presented by the State too closely tracked specialized language from the statute under which he was charged and invited the expert to express a view on the ultimate issue of defendant's guilt. That, defendant argued, was contrary to the standards established for such testimony in *State v. Odom,* 116 *N.J.* 65, 560 *A.*2d 1198 (1989), and reaffirmed in *State v. Summers,* 176 *N.J.* 306, 823 *A.*2d 15 (2003). Defendant also challenged his sentence.

The Appellate Division upheld defendant's conviction, finding that neither the admission of the narcotics expert's testimony, nor the wording of the hypothetical, rose to the level of "error, much less plain error." The Appellate Division remanded the matter to correct a sentencing error. Defendant filed a petition for certification, which we granted. 183 *N.J.* 256, 872 *A.*2d 798 (2005).

 Admission of expert testimony on drug possession and distribution techniques is permissible when reasonably required to assist jurors in understanding subjects that are beyond the ken of an average layperson. *Odom, supra,* 116 *N.J.* at 81, 560 *A.*2d 1198. *Odom* also permits the State to ask a narcotics expert a hypothetical question mirroring the facts of the case, even though the hypothetical may be "expressed in terms of ultimate issues of fact." *Ibid.* Although an expert is not needed to state that which is obvious, the circumstances underlying defendant's drug charges may not have been obvious to the laypersons of the jury. We conclude that there was no error in allowing the expert to testify about methods used by confederates in street-level drug sales or

in allowing the expert to testify about a hypothetical situation that involved numerous detailed facts similar to the facts put forward by the State at trial. Finally, although the wording of the expert's answer elicited by the hypothetical question did not adhere to our admonition in *Odom* and *Summers* to avoid use of precise terminology found in the statute under which defendant is charged, we conclude, as did the Appellate Division, that no plain error occurred.

I.

The facts, summarized below, are derived from the testimony and evidence adduced at trial. On July 20, 2000, Trenton Police Officer David Neiderman was patrolling in an unmarked police vehicle as part of an undercover operation targeting prostitution. As he drove down a street, he noticed a male and a female standing on a corner; the female appeared to wave at him. At the time, Neiderman suspected prostitution and so alerted his arrest team. He then drove back to the corner where the individuals had been standing and pulled over next to them. Both individuals approached the car. The man asked Neiderman "what do you need?" Realizing then that this was a potential narcotics transaction, Neiderman replied "ten," meaning that he wanted ten dollars worth of crack cocaine. The man then looked at the woman and said to her, "give him ten." In response, the woman removed a yellowish rock-like substance from a brown paper wrapping she had been holding. The substance appeared to be crack cocaine. Showing the rock-like object to the man, she asked him "this much?" The man replied "yes." The woman then handed Neiderman the object and received ten dollars from him. As Neiderman drove away, he notified his arrest team. They quickly moved in and arrested the two individuals, who were identified as defendant Anthony Nesbitt and Lenora McCoy.

Defendant was charged with third-degree possession of a CDS (cocaine), contrary to *N.J.S.A.* 2C:35–10a(1) and 2C:2–6 (Count 1); third-degree possession of a CDS with intent to distribute, con-

trary to *N.J.S.A.* 2C:35–5a(1); 2C:35–5b(3) and 2C:2–6 (Count 2); third-degree possession of a CDS with intent to distribute within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–7; 2C:35–5a(1); 2C:35–5b(3); and 2C:2–6 (Count 3); third-degree distribution of a CDS, contrary to *N.J.S.A.* 2C:35–5a(1); 2C:35–5b(3); and 2C:2–6 (Count 4); and third-degree distribution of a CDS within 1,000 feet of school property, contrary to *N.J.S.A.* 2C:35–7; 2C:35–5a(1); 2C:35–5b(3); and 2C:2–6 (Count 5).

At trial, the State introduced testimony from Officer Neiderman and from Detective Veldon Harris of the Mercer County Prosecutor's Office, who was qualified as an expert in narcotics. Harris provided general information about street-level drug sales and then the following exchange occurred.

Q: Detective Harris, for the purposes of the next question, it is a hypothetical, I want you to assume the following facts:

I want you to assume it is 1:46 a.m., and that the location is Locust and Chambers Street in the City of Trenton. I want you to assume further there are two individuals in that location. I'll refer to them as individual A and individual B. I want you to assume further that individual A flags down a vehicle. Assume further that when that vehicle pulls over, that both individual A and individual B approach the vehicle, and that the following conversation takes place:

That individual B says to the person in the vehicle, what do you need? Assume further that the person in the vehicle says ten. Assume then that individual B directs individual A to give the person in the vehicle $10 worth of crack. Assume then that individual A then shows a quantity of CDS, crack cocaine, to individual B and asks, this much? Assume then that individual B answers, yes. And that then that person, individual A, serves the crack cocaine in exchange for money to the person in the vehicle.

Would you be able to form an opinion about whether or not person B was complicit (sic) in the distribution of those drugs to the person in the vehicle?

\* \* \*

A: Yes, I would.

Q: And what would your opinion be?

A: That person was complicit in distributing drugs.

Q: And on what facts do you base that opinion?

A: I base that on the opinion that that individual approached the vehicle, that individual asked the person what they needed, that individual then instructed A, the person A to give the crack cocaine to the person in the vehicle, and the person that pulled out the drugs then asked the other individual, is this how

much, and they said yes. And then the drugs are then given to the person in the vehicle.

Q: Now, if I told you that Individual A was found to have a crack pipe on them at the time of their arrest and no additional drugs, would that affect your opinion?

A: No, it would not.

Q: If I told you that at the time of person B's arrest, that individual had no drugs and no money on them, is that part of your opinion?

A: Yes.

Q: And why is that part of your opinion?

A: Well, that individual, obviously, was utilizing someone else to sell the drugs, so you're not going to find drugs on that person. Also, as far as money, the individual had the money, the money was given back to the person who actually sold the drugs, and this is commonly done in a street-level distribution network when you are utilizing a runner.

As noted previously, defense counsel did not object to the above testimony.

The jury convicted defendant on three counts: third-degree possession of a CDS (Count 1); third-degree distribution of a CDS (Count 4); and third-degree distribution of a CDS within 1,000 feet of school property (Count 5). At sentencing, the trial court merged Count 1 into Count 4 and then reviewed defendant's criminal record and presentence report. Looking to *N.J.S.A.* 2C:44–1a, the court found three aggravating factors and no mitigating factors.[1] The court also determined that defendant was subject to a mandatory extended term pursuant to *N.J.S.A.* 2C:43–6f. The court concluded that the aggravating factors substantially outweighed the mitigating factors and sentenced defendant on Count 5 to a nine-year term of incarceration with a four-and-a-half-year period of parole ineligibility. Defendant also was sentenced to a flat five-year term on Count 4, to be served concurrently with the sentence on Count 5.

---

[1] The court found the following aggravating factors under *N.J.S.A.* 2C:44–1a: (3) the risk that the defendant will commit another offense; (6) the extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted; and (9) the need for deterring the defendant and others from violating the law.

In an unpublished opinion, the Appellate Division affirmed defendant's conviction, remanding only for entry of an amended judgment of conviction merging Counts 4 and 5. The panel rejected defendant's argument that the trial court erred in permitting expert testimony about street-level drug trafficking. Further, the panel examined the hypothetical question posed to Detective Harris in light of *Summers* and *Odom.* The panel concluded that no plain error was committed when the trial court allowed the unchallenged hypothetical because the question: (1) was limited to the facts in evidence; (2) did not refer to defendant explicitly; and (3) did not ask the expert to express an opinion about the legality of the transaction.

## II.

We reaffirmed in *Summers, supra,* 176 *N.J.* 306, 823 *A.*2d 15, that *Odom, supra,* 116 *N.J.* 65, 560 *A.*2d 1198, is the foundational New Jersey case on expert testimony incorporating the use of hypothetical questions about drug possession and distribution activities. At Odom's trial on charges of possession of a CDS with intent to distribute, the prosecutor asked the State's expert to assume the following facts about a hypothetical individual (which were consistent with the facts adduced at trial): (1) a search warrant was executed; (2) eighteen vials of crack were found in a pillowcase in the individual's bed; and (3) in the apartment the police found twenty-four dollars and no drug paraphernalia. *Odom, supra,* 116 *N.J.* at 68, 560 *A.*2d 1198. Based on those facts, the State asked the expert to opine whether the individual in the hypothetical possessed the confiscated drugs for personal use or whether he possessed the drugs with the intent to distribute them. *Id.* at 69, 560 *A.*2d 1198. The trial court overruled defense counsel's objection that the expert was not qualified to testify in respect of the defendant's state of mind. The expert responded "that it was his opinion that the drugs were possessed with an intent to distribute them," and explained the basis for his opinion. *Ibid.* The jury found Odom guilty and the Appellate Division

reversed. *Id.* at 70, 560 *A.*2d 1198. A majority of the panel concluded that the expert's opinion was (1) not helpful to the jury, (2) unduly prejudicial to the defendant, and (3) tantamount to expressing a view about the defendant's guilt. *Ibid.*

This Court reversed, finding that the expert's testimony concerning drug distribution was "reasonably required to assist the jury" because the testimony "covered a subject that was within the specialized knowledge of the expert, and thus beyond the understanding of persons of average knowledge, education, and experience." *Id.* at 81, 560 *A.*2d 1198. Writing for the Court, Justice Handler stated that "as long as the expert does not express his opinion of defendant's guilt but simply characterizes defendant's conduct based on the facts in evidence in light of his specialized knowledge, the opinion is not objectionable even though it embraces ultimate issues that the jury must decide." *Id.* at 79, 560 *A.*2d 1198. Thus, even though the expert at Odom's trial expressed his opinion "in terms of ultimate issues of fact ... [his] opinion did not impermissibly constitute the expression of a view that defendant was guilty of the crime charged." *Id.* at 81, 560 *A.*2d 1198.

Importantly, the Court provided guidelines in *Odom* concerning the use of expert witness testimony regarding the possession and distribution of illegal narcotics.

[I]n proffering the opinion of an expert in this kind of case, the hypothetical question should be carefully phrased to refer only to the testimony and evidence adduced

about the manner of packaging and processing for use or distribution, the significance of various quantities and concentrations of narcotics, the roles of various drug paraphernalia, characteristics of the drugs themselves, the import of circumstances surrounding possession, the conduct of the possessor and the manner in which drugs may be secreted or otherwise possessed for personal use or distrubution [sic].

Once this foundation has been laid, the expert should then be presented with a hypothetical question through which he or she can advise the jury of the significance of these facts on the issue of possession. Having set forth this information in the form of a hypothetical, the expert may be asked if, based on these assumed facts, he or she has an opinion whether the drugs were possessed for personal use or for the purpose of distribution.

It is also essential that the jury be advised, following the presentation of the expert's opinion, of the basis for that opinion. The hypothetical question should clearly indicate that it is the witness' opinion that is being sought and that that opinion was formed assuming the facts and circumstances adduced only at trial. It is important that the witness, and the jury, understand that the opinion cannot be based on facts that are not in evidence.

In addition, to the extent possible, the expert's answer should avoid the precise terminology of the statute defining the criminal offense and its necessary elements. While ordinary expression and plain language should not be distorted, statutory language should be paraphrased. Further, the defendant's name should not be used.

[*Id.* at 81–82, 560 A.2d 1198 (citation omitted).]

The Court also reminded trial courts to instruct juries on the proper weight to be given to an expert opinion and to emphasize that the ultimate decision about a defendant's guilt rests solely with the jury. *Id.* at 82, 560 A.2d 1198.

In *Summers, supra,* 176 *N.J.* 306, 317, 823 A.2d 15 (2003), we stated that there was "no compelling reason to reexamine" our earlier decision in *Odom.* In *Summers,* the defendant sought review of the previously settled question whether an expert witness for the prosecution intrudes on the jury's fact-finding role when "the expert expresse[s] the view that facts presented in a hypothetical (modeled on identical facts adduced at trial) were indicative of drug distribution." *Id.* at 308, 823 A.2d 15. The hypothetical in *Summers* was four paragraphs long and mirrored the exact facts of the case. *Id.* at 310–11, 823 A.2d 15. The defendant did not object to the expert's testimony at trial and, therefore, the plain error standard controlled on appeal. *Id.* at 316, 823 A.2d 15.

Notwithstanding that the hypothetical hewed even more closely to the facts underlying the defendant's charges than the hypothetical in *Odom,* we upheld Summers' conviction because the general guidelines set out in *Odom* had been followed. *Id.* at 315–16, 823 A.2d 15. Although the expert's statement embraced ultimate issues, the hypothetical did not refer to the defendant by name and did not ask for an opinion as to the defendant's guilt. *Id.* at 315, 823 A.2d 15. The trial court also "reduced the chance of improper prejudice by instructing the jury that it could accept all,

part, or none of the [expert's] testimony, and that it alone had to decide questions of guilt." *Id.* at 317, 823 *A.*2d 15. We concluded that no error had occurred, adding that even if we were to assume the presence of error based on the hypothetical's wording, no plain error could be found from the admission of the expert's testimony in the context of the totality of the evidence supportive of Summers' guilt. *Id.* at 316–17, 823 *A.*2d 15.

Since *Odom,* the use of a hypothetical has been an accepted means by which the specialized knowledge of an expert may be placed before the laypersons of the jury in order to inform them about the nuanced techniques utilized by drug peddlers who seek to shield themselves from liability by concealing or obfuscating their drug possession and distribution activities. *See, e.g., State v. Berry,* 140 *N.J.* 280, 658 *A.*2d 702 (1995) (allowing use of hypothetical in trial on charge of possession with intent to distribute CDS in order to educate jury on how juveniles were being utilized in drug sale activities). That said, *Odom* should not be misconstrued to signal our willingness to accept, carte blanche, the use of hypothetical questions asked of law enforcement experts in all drug charge settings. To be admissible, expert testimony must be about "a subject matter that is beyond the ken of the average juror," *State v. Kelly,* 97 *N.J.* 178, 208, 478 *A.*2d 364 (1984), and limited to that which assists " 'the trier of fact [in] understand[ing] the evidence or determin[ing] a fact in issue,' " *Berry, supra,* 140 *N.J.* at 291, 658 *A.*2d 702 (quoting predecessor to *N.J.R.E.* 702). *Odom* does not license the use of a narcotics expert to tell a jury that which is obvious.

Trial courts are expected to perform a gatekeeper role in determining whether there exists a reasonable need for an expert's testimony, and what the parameters of that testimony may be. Consistent with *Evidence Rule* 702, a trial court must be satisfied that the expert's knowledge and experience is reasonably required to inform the jury on a matter that may be beyond the jurors' ken and will help jurors understand the evidence or determine a fact in issue. Further, when the expert's testimony

will include an opinion on an ultimate issue, see *N.J.R.E.* 704, a trial court must be satisfied that use of a hypothetical question is reasonably required and not unduly prejudicial. The failure of a defendant to object to expert testimony does not relieve the trial court of its gatekeeper responsibilities in either respect.

In sum, the Court in *Odom* provided the State with flexibility to educate jurors on the latest tactics designed by drug dealers to shield themselves from responsibility for their illegal actions. Expert testimony, including opinions that embrace ultimate issues, is permitted when the testimony has value in assisting the jury's understanding of facts and their significance, and when the trial court finds that that testimony is not unduly prejudicial.

## III.

### A.

In the instant matter, defendant did not personally hold the drugs, did not personally give the drugs to the officer, and did not personally accept the payment from the officer. Those facts take this matter outside of the ken of the average layperson in respect of the question ·whether defendant was an accomplice to the distribution of crack cocaine. Detective Harris's testimony did not explain the plainly obvious to the jury.

We do not presume that ordinary members of the public who are called on to serve as jurors are versed in the many ways in which a seller of crack cocaine can act in concert with others in the business of distributing drugs on the street. The State's expert assisted the jury in understanding how defendant's statements and actions, in combination with the words and actions of McCoy, could be indicative of drug distribution. *State v. Berry,* 140 *N.J.* 280, 658 *A.2d* 702 (1995), provides guidance as to when expert testimony concerning aspects of drug transactions is permissible. *Berry* involved two consolidated cases with different defendants, Berry and Cannon. As to defendant Berry, the Court allowed expert testimony that enabled the jury to understand evidence in

support of accomplice liability by specifically discussing, among other practices, the use of "juveniles as 'mules' to transport drugs." *Id.* at 302, 658 *A*.2d 702. As to defendant Cannon, the Court reversed the trial court's decision barring expert testimony in answer to a hypothetical question. *Id.* at 303–04, 658 *A*.2d 702. The Court recognized the value to a jury in learning about street dealers' practice of using a "money man" to limit their exposure to prosecution for drug distribution. *Id.* at 304, 658 *A*.2d 702.

The failure of defendant to have interposed an objection to the expert's testimony limits our review to a search for plain error, *Rule* 2:10–2; such error is not present here. This case is distinguishable from *State v. Boston,* 380 *N.J.Super.* 487, 882 *A*.2d 987 (App.Div.2005); *State v. Singleton,* 326 *N.J.Super.* 351, 741 *A*.2d 168 (App.Div.1999); and *State v. Baskerville,* 324 *N.J.Super.* 245, 735 *A*.2d 39 (App.Div.1999), *certif. denied,* 163 *N.J.* 10, 746 *A*.2d 456 (2000). In each of those cases plain error occurred in the admission of an expert's testimony because no expert was needed to explain the straightforward manner in which the transactions at issue took place. Stated simply, each defendant was observed directly handing something to the alleged purchaser and receiving what appeared to be payment in return. Because there was no need for an expert to explain any unusual aspect of those transactions, plain error was found to have occurred by virtue of the admission of expert testimony on an ultimate issue that was for the jury.

In the present matter, we hold that Detective Harris's testimony could have been perceived as helpful to the jury in understanding the nature of the exchange, which involved a drug purchaser (Officer Neiderman), defendant, and his confederate McCoy. Moreover, even had there been an objection prior to the expert's testimony and use of a hypothetical, we would find no error in allowing the subject matter of Harris's testimony.

### B.

The wording of the hypothetical question raises a closer question. Although it is permissible for a State's narcotics expert

to be asked a hypothetical question through which the jury can be informed of the significance of the facts adduced at trial, there are parameters within which we expect the State, and the courts as gatekeepers, to act.

■ Our concern about expert testimony encompassing an ultimate issue led us to state in *Odom,* and to underscore in *Summers,* that the phrasing of a hypothetical should not track too precisely the exact language of the criminal statute with which a defendant has been charged. *Odom, supra,* 116 *N.J.* at 82, 560 *A.*2d 1198 (stating that "the expert's answer should avoid the precise terminology of the statute defining the criminal offense and its necessary elements."). Expert testimony that recites the legal conclusion sought in a verdict is not helpful to the jury.[2] *United States v. Barile,* 286 *F.*3d 749, 760 (4th Cir.2002). In navigating between permissible expert opinion that may embrace ultimate issues and opinion testimony that contains improper legal conclusions, other courts addressing this subject have found it useful to consider whether the disputed question that was posed to the expert "tracks the language of the legal principle at issue or of the applicable statute, and ... whether any terms employed have specialized legal meaning," *ibid.* (citation omitted). As our Court did in *Odom,* those appellate courts have counseled lower courts to paraphrase legal terms. *See, e.g., Torres v. County of Oakland,* 758 *F.*2d 147, 151 (6th Cir.1985) (noting specialized legal meaning of "discrimination" in Title VII cases and suggesting possible

---

[2] The Fourth Circuit reasoned that

[e]xpert testimony that merely states a legal conclusion is less likely to assist the jury in its determination. *See Woods v. Lecureux,* 110 *F.*3d 1215, 1220 (6th Cir.1997) ("It is, therefore, apparent that testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excluded under the Rules."); *Weinstein' s Federal Evidence* § 704.04[2][a] (2d ed. 2001) ("The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness.... The testimony supplies the jury with no information other than the witness's view of how the verdict should read.").

[*United States v. Barile,* 286 *F.*3d 749, 760 (4th Cir.2002)(footnote omitted).]

rephrasing of expert's hypothetical question) [3]; *see also Fed. R.Evid.* 704 advisory committee's notes (offering examples of proper and improper questions to expert about ultimate issue of mental capacity to execute will).

Defendant was charged with violating *N.J.S.A.* 2C:35–5(a)(1), which states that "it shall be unlawful for any person to knowingly or purposely ... distribute ... a controlled dangerous substance" and *N.J.S.A.* 2C:2–6, entitled "Liability for conduct of another; complicity." The expert specifically testified that in his opinion the hypothetical individual who corresponded to defendant "was complicit in distributing drugs."

The word "complicit" appears in the title and body of *N.J.S.A.* 2C:2–6, and is by definition aligned with the principles of accomplice liability.[4] The State should have avoided its use. The phraseology of the State's hypothetical did not adhere to this Court's guidance in *Odom* that counseled against use of precise terminology from the criminal statutes, preferring instead paraphrased common language when possible. Notwithstanding defendant's valid criticism of the hypothetical's phrasing, under the plain error standard, we agree with the Appellate Division that the

---

[3] The expert in *Torres* was asked "whether 'Torres had been discriminated against because of her national origin.' " *Torres, supra,* 758 *F.*2d at 151. The court "emphasize[d] that a more carefully phrased question could have elicited similar information and avoided the problem of testimony containing a legal conclusion." *Ibid.* The court noted that "defendants could have asked [the expert] whether she believed Torres' national origin 'motivated' the hiring decision." *Ibid.* The court explained that the term "motivated" would "directly address the factual issue of [Torres' supervisor's] intent without implicating any legal terminology." *Ibid.* (citation omitted).

[4] "Complicity" is defined as: "an association or participation in or as if in guilt," *Webster' s Third New International Dictionary* 465 (1971); "[i]nvolvement as an accomplice in a crime or wrongdoing," *Webster's II New College Dictionary* 230 (1995); "[t]he act or state of being an accomplice," *Funk and Wagnalls New Comprehensive International Dictionary of the English Language* 268 (1973 Encyclopedic Edition); "[a]ssociation or participation in a criminal act; the act or state of being an accomplice," *Black's Law Dictionary* 279 (7th ed.1999).

poorly phrased hypothetical did not have the capacity to bring about an unjust result.

There was sufficient competent evidence of defendant's statements and activities in respect of the sale of crack cocaine to Officer Neiderman. Moreover, the hypothetical never referred explicitly to defendant and was limited to facts presented at trial. The trial court instructed the jury on the proper weight to be given to an expert's opinion, and reminded the jurors that the ultimate decision about defendant's guilt was solely their determination. Finally, we note that the trial court gave an appropriate instruction on accomplice liability that permitted the jury to make that ultimate determination aided by a clear and correct statement of the law. In view of the entirety of this trial, we perceive no miscarriage of justice. Accordingly, we find no plain error. In the future, trial courts should be sensitive to such hypotheticals and, as part of the trial court's gatekeeping function, should see to it that, when possible, legal terminology is paraphrased.

## IV.

In conclusion, we affirm defendant's conviction. This matter cannot be completely disposed of, however, because we must reverse on sentencing. Defendant received a mandatory extended term on Count 5 and was sentenced to nine years of incarceration. Because defendant's sentence on the extended term was set above the presumptive sentence applicable at the time to the extended-term range, the matter must be remanded to permit re-sentencing. *State v. Natale,* 184 *N.J.* 458, 878 *A*.2d 724 (2005).

The judgment of the Appellate Division is affirmed in part, and reversed in part. The cause is remanded for further proceedings consistent with this opinion.

Justice ALBIN, dissenting.

In this case, an experienced police detective, qualified by the court as an expert in the field of narcotics distribution, offered his opinion that defendant was an accomplice to the crime of posses-

sion with intent to distribute a controlled dangerous substance. Cloaked with the mantle of authority, the police expert delivered to the jury his own verdict that defendant was guilty of the crime charged. Such testimony coming from an authority claiming to have superior knowledge and experience must have had a profound impact on the thinking of the jury. *See United States v. Fosher,* 590 *F.*2d 381, 383 (1st Cir.1979) (discussing "aura of special reliability and trustworthiness" surrounding expert testimony); *State v. Wheeler,* 416 *So.*2d 78, 82 (La.1982) (explaining that risk of prejudice to defendant is exacerbated "when the witness expressing the opinion is one, such as a police officer, in whom jurors and the public repose great confidence and trust"). I cannot agree that such testimony did not have the capacity to cause an unjust result. It was for the jury, not a law enforcement expert, to make the credibility and factual calls that decided guilt or innocence. For that reason, I must part from the majority, which finds Detective Harris's testimony harmless error. I therefore dissent.

Although clearly prejudicial, Detective Harris's testimony did not draw an objection from defense counsel. *Ante* at 507, 888 *A.*2d at 473–74. Such a procedural default ordinarily would weigh heavily against defendant, *see R.* 1:7–2, *R.* 2:10–2, but in these circumstances I find counsel's lapse perfectly understandable. The precedents of this Court have signaled acceptance of the almost unlimited use of expert testimony to supplant the common knowledge of jurors in drug cases.

The Court has relied on legal fictions to justify the expanded use of police expert testimony in drug cases that would not fly in other cases. In our leading decisions on the subject, we have held that a police narcotics expert cannot express an opinion that a defendant is *guilty* of possession of drugs with intent to distribute, but can opine that a defendant *possessed* the drugs with intent to distribute. *State v. Summers,* 176 *N.J.* 306, 314–16, 823 *A.*2d 15 (2003); *State v. Odom,* 116 *N.J.* 65, 78–81, 560 *A.*2d 1198 (1989). There is no semantic difference between those two expert opin-

ions, except by the commandments of this Court. *See Summers, supra,* 176 *N.J.* at 318, 823 *A.*2d 15 (Albin, J., dissenting). In addition, the majority in this case states that "the phrasing of a hypothetical should not track too precisely the exact language of the criminal statute with which a defendant has been charged." *Ante* at 517, 888 *A.*2d at 480 (citing *Odom, supra,* 116 *N.J.* at 82, 560 *A.*2d 1198). However, the majority still would permit a police expert to testify that, in his opinion, the defendant possessed drugs with intent to distribute when that defendant is charged with possession with intent to distribute. *See ante* at 511–15, 888 *A.*2d at 476–79.

I do not question the need for expert testimony on arcane subjects that would enlighten the jury. An average juror will not know the meaning of code language used by drug distributors or the importance to be attached to the packaging, quantity, and quality of drugs. An expert could edify jurors concerning the customary use of scales and other drug paraphernalia by drug traffickers, as well as the methods used by drug dealers to ply their trade. *See Summers, supra,* 176 *N.J.* at 322–23, 823 *A.*2d 15 (Albin, J., dissenting). In those instances, the specialized knowledge and training of the expert is of assistance to the jury in understanding the evidence before it. *See N.J.R.E.* 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.").

However, the jury is capable of making simple deductions from straightforward facts based on commonsense and ordinary life experience. After an expert explains the significance of the methods and means of drug dealing—matters outside common knowledge—jurors are well equipped to answer questions such as whether the defendant possessed drugs with intent to distribute, or whether the defendant was an accomplice in a drug transaction, without further expert guidance. This is not rocket science. As

the majority notes, jurors do not need experts to explain the obvious. *Ante* at 507–08, 514, 888 *A.*2d at 474, 478. Jurors have the capacity to reason through to correct conclusions, as they do in other cases, including highly complex ones. They can do so in drug cases as well. I continue to adhere to my dissent in *Summers. See* 176 *N.J.* at 318–24, 823 *A.*2d 15; *see also* Thomas M. Fleming, J.D., Annotation, *Admissibility, in Criminal Prosecution, of Expert Opinion Allegedly Stating Whether Drugs Were Possessed with Intent to Distribute—State Cases,* 83 *A.L.R.*4th 629 (2005) (showing that substantial minority of jurisdictions bars expert opinion testimony that defendant possessed drugs with intent to distribute).

I am confident that the common wisdom of ordinary jurors will not allow otherwise guilty drug offenders to escape the net of justice. It is not necessary to strain the operation of our evidence rules to convict drug traffickers. There is consolation to be found in the majority's conclusion that the police expert's testimony here went too far. *Ante* at 518–19, 888 *A.*2d at 480–81. In the best light, the message from the majority opinion will be that there are limits to the use of expert opinion testimony in drug cases. That would be a positive step forward in our jurisprudence.

However, I would find that the admission of Detective Harris's testimony was plain error. In failing to object to Detective Harris's testimony, defense counsel may have believed—based on this Court's case law—that there were few restrictions limiting the use of police expert testimony in drug cases.

Because I cannot agree that this defendant received a fair trial, I would reverse the Appellate Division. I therefore dissent.

Justice LONG joins in this opinion.

*For affirmance in part/reversal in part*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, WALLACE and RIVERA–SOTO—5.

*For reversal*—Justices LONG and ALBIN—2.