NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5571-14T3
STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ANTHONY SMITH,

 Defendant-Appellant.
_______________________________

 Submitted September 11, 2017 - Decided September 28, 2017

 Before Judges Accurso and Vernoia.

 On appeal from Superior Court of New Jersey,
 Law Division, Essex County, Indictment No.
 14-04-0943.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Laura B. Lasota, Assistant
 Deputy Public Defender, of counsel and on
 the brief).

 Robert D. Laurino, Acting Essex County
 Prosecutor, attorney for respondent (Camila
 Garces, Special Deputy Attorney General/
 Acting Assistant Prosecutor, on the brief).

PER CURIAM

 A jury convicted defendant Anthony Smith of two counts of

third-degree possession of a controlled dangerous substance,

N.J.S.A. 2C:35-10a(1); one count of third-degree possession with
intent to distribute, N.J.S.A. 2C:35-5a(1); one count of third-

degree possession with intent to distribute within 1000 feet of

school property, N.J.S.A. 2C:35-7a; two counts of second-degree

possession of a firearm in the course of committing a drug

offense within 1000 feet of school property, N.J.S.A. 2C:39-

4.1(a); and the lesser-included disorderly persons offense of

resisting arrest, N.J.S.A. 2C:29-2a(1). The jury acquitted him

of another distribution count, a 1000 foot offense, maintaining

a fortified structure to distribute drugs and third-degree

resisting arrest.

 Defendant raises two issues on appeal:

 POINT I

 THE TRIAL COURT'S INSTRUCTIONS TO THE JURY
 FOLLOWING ITS ANNOUNCEMENT THAT IT WAS
 DEADLOCKED WERE INAPPROPRIATE AND COERCIVE,
 AND REQUIRE A REMAND FOR A NEW TRIAL.

 POINT II

 THE TRIAL COURT ERRONEOUSLY PERMITTED THE
 STATE TO CALL A NARCOTICS EXPERT TO TESTIFY
 AS TO STREET-LEVEL NARCOTICS DISTRIBUTION
 WHEN THE DISPUTED FACTS OF THE CASE WERE
 STRAIGHTFORWARD AND EXPERT TESTIMONY WAS NOT
 REQUIRED.

We are not persuaded by either argument.

 This was a short trial. Although the court had advised the

jury in voir dire that trial testimony would consume six days,

the case was tried in two days. The facts were simple.

 2 A-5571-14T3
Defendant was arrested by officers who had been surveilling his

apartment in order to execute a search warrant. When defendant

emerged to speak to two people who had arrived in a black truck,

the officers moved in. Defendant tried to run back inside,

dropping a bundle of heroin in his haste. The officers managed

to arrest defendant after a struggle in his foyer, during which

both were bitten by defendant's pitbull. Police found over

$1800 in defendant's pockets. More drugs, currency and two

loaded revolvers were recovered from defendant's apartment.

 The State presented the testimony of the two officers who

arrested defendant, a ballistics expert, defendant's landlord

and Michael Bettin, an investigative aide from the prosecutor's

office who testified as an expert on street-level drug

distribution. Bettin explained hand-to-hand transactions,

stashes and stash locations, including fortified stashes, heroin

packaging, how heroin is consumed and the practice of "re-

upping," the purchase of a large quantity of stamped and pre-

packaged heroin from a supplier for resale.

 The defense conceded defendant was a heroin addict and that

he also used Xanax, which he crushed and mixed with heroin.

Defendant claims that because the officers did not testify to

seeing or interrupting a hand-to-hand transaction, or that

defendant accessed a stash or even that he appeared to be

 3 A-5571-14T3
exchanging a large sum of money for heroin from a supplier,

Bettin's testimony was unnecessary and highly prejudicial.

Specifically, defendant claims that without Bettin's testimony,

the State's witnesses did not "strongly support[]" the State's

theories that defendant was either selling drugs to the

occupants of the black truck or using the more than $1800 he was

carrying to "re-up" his stash.

 It is well established that expert testimony on the use and

distribution of unlawful drugs is permissible to assist jurors

in understanding subjects within the specialized knowledge of

the expert and beyond the ken of an average layperson. State v.

Odom, 116 N.J. 65, 80-81 (1989). Our Supreme Court has

instructed that trial judges are gatekeepers here, insuring that

only expert testimony of value in assisting a "jury's

understanding of facts and their significance" and "not unduly

prejudicial" is admitted. State v. Nesbitt, 185 N.J. 504, 515

(2006).

 Having reviewed the trial transcripts, we are satisfied

Judge Peter V. Ryan conscientiously discharged his gatekeeping

role. The judge raised with counsel whether an expert should be

permitted to testify given the evidence. He conducted an

extended discussion on the record, during which he carefully

reviewed the facts and reasoning of the controlling cases.

 4 A-5571-14T3
After hearing the arguments of counsel, the judge permitted

limited expert testimony and prohibited the use of hypothetical

questions.

 The State hewed to the judge's direction to "make sure" the

expert was "specific" and refrained from posing hypotheticals.

The expert defined terms and explained characteristics of the

drug trade that in his experience distinguished it from the

purchase of drugs for personal use. As circumscribed, the

evidence was relevant, probative and certainly could have

assisted the jury in determining whether defendant possessed

heroin and Xanax in a fortified structure with the intent to

distribute it, or was simply a husband and father with a drug

problem and a pet pitbull. We do not find its probative value

was substantially outweighed by the risk of undue prejudice.

See State v. Cain, 224 N.J. 410, 421 (2016) (reviewing the

Court's pronouncements on the appropriate use of expert

testimony in drug cases and limiting hypotheticals to prohibit

encroachment on the jury's role as the trier of fact).

 We turn to defendant's issue with the jury instructions.

At 3:30 p.m., after having deliberated for two hours and fifty

minutes, the jury submitted a note to the judge, which stated

 5 A-5571-14T3
"We cannot move ahead. Can't come to a decision." Instead of

delivering a Czachor1 charge, the judge told the jury:

 Ladies and Gentlemen, this wasn't a
 long case and it wasn't a complicated case
 either. The facts are the facts.

 Everybody has a responsibility here. I
 have the responsibility to make sure the law
 is given to you appropriately and . . .
 decide questions on the law.

 [The prosecutors have] a duty to
 prosecute a case; [defense counsel] has a
 responsibility to defend the case. You have
 the responsibility of . . . resolving this
 case.

 You've been out a total of three hours.
 Woefully insufficient. I'm going to give
 you all the time in the world, and tomorrow
 is another day. We're going to bring you
 back in tomorrow to deliberate also. All
 right?

 I can't let you go home until we get
 this case resolved one way or another.

 Again, I appreciate your patience and
 your cooperation . . . let's just see what
 happens, all right? You're tired, let's
 continue to deliberate and then we'll leave
 you go at 4:00, and bring you back tomorrow.

 Out of earshot of the jury, defense counsel immediately

objected to the court's failure to deliver a Czachor charge and

to the judge's remark that the case had to be "resolved one way

or another." The judge responded that it was "too early" to

1
 State v. Czachor, 82 N.J. 392, 405 n.4 (1980).

 6 A-5571-14T3
give a Czachor charge and that it was the jury's responsibility

to decide the case. The judge apologized to counsel if he had

communicated that "inartfully." At 4:00 p.m., the judge

released the jury saying:

 Again, I, I want to impart to you this.
 It is a very, very short time you have been
 deliberating. We're going to give you all
 the time in the world to decide this case.
 All right?

 So don't think about this case tonight
 at all. Come back tomorrow fresh . . . .

After deliberating for two hours the following day, the jury

returned its verdict convicting defendant on six counts of the

indictment, acquitting him of three others, including

maintaining a fortified structure, and finding him guilty of the

lesser included disorderly persons offense of resisting arrest.

 We agree with defendant that the court was correct to

direct the jury to continue its deliberations, see State v.

Figueroa, 190 N.J. 219, 235 (2007), but its comment about not

letting the jury go home until the case was resolved was

improper and should not have been made. We do not, however,

agree the remark, in context, was "coercive," or deprived

defendant of a fair trial.

 As we have noted, this was a very short trial. At the time

the court made the remark to which defendant objects, it had

 7 A-5571-14T3
only the day before delivered, in the words of the model charge,

the instruction to the jury on further deliberations to be given

in the event of deadlock, the Czachor charge. See Model Jury

Charges (Criminal), "Judge's Instructions on Further Jury

Deliberations" (2013). Although the remark was no doubt

inartful, as the court conceded, it was obviously not intended

to be taken literally and cannot be considered prejudicial error

in light of the court's otherwise careful and correct

instructions to the jury. Judged in context, it presents none

of the concerns that impelled us to reverse the verdict in State

v. Adim, 410 N.J. Super. 410, 430 (App. Div. 2009) (concluding

combined impact of coercive and intrusive components of trial

court's supplemental instruction required reversal of verdict).

 In his brief, defendant notes the judgment of conviction

erroneously states he was convicted of third-degree resisting

arrest instead of the lesser-included disorderly persons

offense, N.J.S.A. 2C:29-2a(1). We further note the judgment

also appears to erroneously state the total custodial term to be

five years instead of the ten years imposed. Accordingly, a

limited remand for correction of the judgment is required. See

State v. Rivers, 252 N.J. Super. 142, 147 n.1 (App. Div. 1991)

(noting in the event of a discrepancy between the court's oral

pronouncement of sentence and the sentence described in the

 8 A-5571-14T3
judgment of conviction, the sentencing transcript controls and a

corrective judgment is to be entered).

 Defendant's conviction is affirmed. The matter is remanded

for correction of the judgment of conviction. We do not retain

jurisdiction.

 9 A-5571-14T3