**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2822-18T3

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

BILLIE JOHNSON,

    Defendant-Respondent.

_____

<div style="margin-left:2em">

Submitted August 5, 2019 – Decided August 9, 2019

Before Judges Sabatino and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 18-04-0852.

Mary Eva Colalillo, Camden County Prosecutor, attorney for appellant (Linda Anne Shashoua, Assistant Prosecutor, of counsel and on the brief).

Joseph E. Krakora, Public Defender, attorney for respondent (Whitney Faith Flanagan, Assistant Deputy Public Defender, of counsel and on the brief).

</div>

PER CURIAM

I.

This appeal by the State arises out of the warrantless seizure of bags of heroin from defendant after a patrolman observed him being handed cash in connection with an apparent drug transaction on the streets of Camden. Although it found the unrebutted testimony of the patrolman describing the events to be "very credible," the trial court concluded the State lacked probable cause to arrest and search defendant, and consequently suppressed the seized contraband.

For the reasons that are detailed in this opinion, we reverse the suppression ruling. We do so because the circumstances are legally sufficient to establish probable cause that defendant had taken part in a drug transaction.

The salient facts were described in the suppression hearing testimony of Detective David Stinsman of the Camden County Police Department. As of that time, he had been on the police force for over five years, initially as a patrolman and thereafter as a detective in the Narcotics/Gang Unit. Officer Stinsman had been specifically trained at the police academy to recognize hand-to-hand narcotics transactions. Before the present incident, he had participated in about twenty arrests for narcotics offenses.

A-2822-18T3

As described by Officer Stinsman, he was working alone in plainclothes on the day shift in the City of Camden on February 19, 2018. He noted the area was generally known by the police to be one in which drug transactions were common. He stopped his patrol car at the intersection of Sixth Street, Spruce Street, and Newton Avenue.

From his unobstructed view about ten feet away, Stinsman observed three African-American males walking down the street together. One of them, Jerry Pyles, separated from the other two when an unidentified while male approached. Stinsman saw the white male give Pyles money in exchange for small blue-colored bags. The officer also noticed two other males standing about five feet away, one of them later identified as defendant Billie Johnson and the other named Darnell Judge. As recounted by the officer, he saw Pyles, without engaging conversation, "directly" and "immediately" hand to Johnson the cash he had received from the white male.

Having perceived this apparent hand-to-hand narcotics transaction, Officer Stinsman radioed for backup officers then arrested and searched the three African-American males. The officers found on Pyles a dozen Ziploc bags containing blue wax folds that appeared to be heroin, plus $17 in currency.

A-2822-18T3

Meanwhile, the search of Johnson's person revealed eight Ziploc bags also containing blue wax folds of a powdery substance, as well as $362 in currency.

The State charged Johnson with third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1), and third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3). Pyles was charged as a co-defendant with drug offenses as well.[1]

As Officer Stinsman explained to the court, his narcotics training and experience indicated to him that Pyles and Johnson and the third male were acting as a "drug set." Typically, in such a drug set, one individual supplies the drugs to a customer, another person takes and holds the money paid for the drugs, and a third person can act as a lookout. In the present situation, Johnson functioned as a "money man," who received the drug proceeds from Pyles immediately after the customer tendered the cash payment.

Defendant did not present any competing testimony at the suppression hearing. His counsel argued that the transfer of cash from Pyles to Johnson could have been innocuous, and that the circumstances were insufficient to rise to the level of probable cause that Johnson had committed or participated in a

---

[1] Pyles did not join in Johnson's suppression motion. The third companion apparently was not charged with any criminal offense, although that is inconsequential to this appeal.

A-2822-18T3

narcotics offense. The prosecutor countered that probable cause was indeed present, based on Officer Stinsman's observations, and that the search of Johnson's person incident to his arrest was constitutionally permissible without a warrant.

The trial court expressly found Officer Stinsman's testimony to be "inherently believable," and that he was "a very credible witness." Nevertheless, the court concluded as a matter of law that the police did not have sufficient probable cause to arrest Johnson.

The court likened the present situation to the circumstances in State v. Pineiro, 181 N.J. 13 (2004), in which the Supreme Court invalidated the warrantless search of a suspected drug dealer, whom the police had seen being handed a cigarette pack by another adult in a high-crime area. The State argued the cigarette pack could have contained illegal drugs. The Court held in Pineiro that the simple transfer of the cigarette pack, in and of itself, was insufficient to establish probable cause to justify the recipient's arrest and warrantless search. Id. at 28-29.

The State in this case moved for reconsideration, which the trial court denied in an oral opinion that essentially repeated its earlier legal analysis. We

5

granted the State's motion for leave to appeal and have considered merits briefing from both parties.

## II.

Our analysis of the trial court's suppression ruling is guided by well-settled principles of law and appellate review.

A warrantless search by a law enforcement officer is generally unconstitutional unless it satisfies a recognized categorical exception to the warrant requirement of the Federal and New Jersey Constitutions. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); State v. Witt, 223 N.J. 409, 422 (2014). In this case, the State relies on the longstanding exception for searches incident to the lawful arrest of persons based upon probable cause that they committed a criminal offense. Chimel v. California, 395 U.S. 752, 755 (1969); State v. Doyle, 42 N.J. 334, 343-44 (1964). Probable cause must be manifest before the arrest or search is performed. "A search undertaken merely for the purpose of uncovering evidence with which to arrest and convict [a person] of crime is not made lawful because the desired evidence is obtained." Doyle, 42 N.J. at 342.

"Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information,

[are] sufficient in themselves to warrant [an officer] of reasonable certainty in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). See also State v. Moore, 181 N.J. 40, 46 (2004). The assessment of probable cause depends upon "the totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230-31, 238 (1983); see also State v. Novembrino, 105 N.J. 95, 122-23 (1987). Probable cause is "a fluid concept-turning upon the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232 (emphasis added). This highly contextual standard "requires nothing more than a practical common-sense decision whether, given all the circumstances, . . . there is a fair probability" that a crime has been committed. State v. Johnson, 171 N.J. 192, 214 (2002).

When reviewing on appeal a trial court's decision concerning an exception to the warrant requirement, we afford considerable deference to the factual findings of the judge who heard the pertinent testimony at the suppression hearing. We must accept the judge's factual findings "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015). However, we owe no such comparable deference to the judge's

legal conclusions. Id. at 263. Instead, we review such legal determinations de novo. Ibid.

Applying these standards to the present record, we accept the trial court's factual findings about what Officer Stinsman observed at the Camden intersection on the date in question. Those factual observations are based upon the testimony of the officer, whom the trial court repeatedly found to be a credible witness. We part company, however, with the trial court's legal assessment that the observed behavior did not rise to the level of probable cause that defendant Johnson had participated in an apparent narcotics transaction.

As the officer explained, he reasonably perceived that Johnson had acted as the so-called "money man" in a drug transaction with his companions. The officer personally witnessed at close range defendant and his companions walking together on the street and then briefly separating a few feet away from one another. Pyles then exchanged a wrapped packet of what appeared to be narcotics to the pedestrian customer, receiving cash in exchange. Pyles then immediately and directly handed that cash to Johnson, without any discussion.

As Officer Stinsman explained, based upon his training and experience with narcotics transactions, the behavior he witnessed is consistent with the practices of drug sets in which no one member is exclusively involved in the

entire transaction. Such schemes are deliberately arranged to impede the detection and apprehension of the criminal participants. Our case law has recognized the functional role that a "money man" such as Johnson can perform in such narcotics transactions on the streets. See, e.g., State v. Nesbitt, 185 N.J. 504, 516-19 (2006) (upholding a conviction for drug distribution where the defendant did not personally give the drugs to the buyer or personally accept the payment from the buyer); see also State v. Berry, 140 N.J. 280, 303-04 (1995) (similarly upholding a narcotics distribution conviction where a "money man" was utilized).

Although Officer Stinsman did not have especially lengthy experience as a narcotics officer, his training and background was more than sufficient to provide an evidential foundation for the reasonable inferences he drew at the scene from his observations. Moreover, although the roles of the three men in this case slightly varied from the typical scenario, defendant's apparent function as a "money man" was reasonably supported by the evidence.

The trial court's comparison of this case to the facts in Pineiro, 118 N.J. at 13, was legally misplaced. The distinguishable circumstances in Pineiro were far weaker and did not support a finding of probable cause. The defendant in Pineiro was simply handed a cigarette pack on a public street in a high-crime

area. Id. at 18-19. Although Pineiro was generally suspected to be a drug dealer, there is no indication in the Court's opinion that the police observed anyone at the scene pay money for narcotics and receive them in exchange. Id. at 28. It was speculation for the police to assume, without more, that the cigarette pack contained narcotics. Ibid.

Here, the coordinated actions of defendant and his companions in exchanging a blue packet of apparent drugs or cash from an apparent customer, and then immediately handing those proceeds to defendant, is far more indicative of his participation in criminal activity. The integrated series of events distinguishes this case from the simple and often innocuous act of Civilian "A" handing money to Civilian "B." The fact that the putative buyer apparently was not arrested is not dispositive of the suppression analysis.

Several times in its oral opinions, the trial court acknowledged this is a "close case." We agree with that assessment, but respectfully conclude that, on balance, the factual proofs are legally adequate to support the constitutionality of this search-and-seizure.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2822-18T3