SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Yasin Simms (A-14-14) (074209)**
**[NOTE: This is a companion case to State v. Scott M. Cain (A-8-14) (074124), also filed today.]**

Argued October 26, 2015 -- Decided March 15, 2016

**ALBIN, J., writing for a unanimous Court.**

The issue in this appeal is whether the hypothetical question posed by the State to its narcotics expert witness elicited an ultimate-issue opinion that invaded the jury's exclusive role as trier of fact and impermissibly bolstered the State's fact evidence.

On September 15, 2009, while conducting a drug surveillance of a public housing project in Atlantic City, Detective Michael Ruzzo of the Atlantic City Police Department observed a four-door silver car park alongside a curb near the project. The driver of the car, later identified as Sean Atkinson, reclined in his seat so that his head was no longer visible, although he occasionally popped his head up to look around. Detective Ruzzo then radioed Police Detectives William Warner and James Barrett, who were nearby, stating that he had in his sight a male "waiting in the area to possibly buy C.D.S." Shortly afterwards, a red car pulled directly in front of the silver car, so that the two vehicles faced each other nose-to-nose. Defendant, the driver of the red car, exited and approached the silver vehicle. Detective Ruzzo observed defendant lean into the open passenger's window of the silver car and hand "an object" to Atkinson in exchange for what the detective believed was "one bill of currency." Just as Detective Ruzzo radioed for Detectives Warner and Barrett "to move in," the two detectives arrived on the scene.

Detective Warner saw defendant lean into the silver car and then walk away. He did not see an exchange between Atkinson and defendant. As defendant walked in the direction of Detectives Warner and Barrett, who had exited their vehicle, he placed "something" in his back pocket. The detectives then took defendant into custody. Detective Warner next approached the driver's side window of the silver car and observed "a bundle of heroin on the passenger-side seat." Atkinson was arrested, and ten packets of heroin stamped with the logo "Sweet Dreams" were seized from the car. In the meantime, Detective Ruzzo walked toward the red car and observed Monae Butcher in the front passenger seat "stuffing something down the rear of her pants." Detective Ruzzo ordered Butcher out of the car and called a female officer to assist after Butcher denied having any contraband on her. Butcher then pulled from the back of her pants thirteen bags of heroin, also stamped with the logo "Sweet Dreams." The police later recovered a $100 bill from defendant's rear pocket and an additional $56 from his person.

At trial, the prosecutor presented Detective Kevin Lockett of the Atlantic County Prosecutor's Office as an expert "in the field of narcotics use and distribution as well as the accompanying aspects of narcotics distribution." The prosecutor posed a lengthy hypothetical question to the drug expert which included the assumed fact that Detective Ruzzo actually observed defendant hand a buyer ten packets of heroin for cash. That assumed fact, however, was not based on an actual fact because the detective observed only an unidentified object in defendant's hands. The expert, moreover, expressed the opinion that the co-defendant conspired with defendant to distribute drugs, which was another way of saying that defendant conspired with the co-defendant. Defendant did not object to the hypothetical question or to the response, and he did not present any witnesses.

The jury convicted defendant of possession of heroin, possession of heroin with the intent to distribute, distribution of heroin, possession of heroin with intent to distribute within a school zone (all third degree), and second-degree possession of heroin with intent to distribute within 500 feet of a public housing facility. Defendant was found not guilty of third-degree conspiracy to distribute heroin. The trial court imposed an aggregate sentence of ten years with a five-year period of parole ineligibility for possession of heroin with intent to distribute within a school zone and possession of heroin with intent to distribute within 500 feet of a public housing facility.

Defendant appealed. The Appellate Division affirmed defendant's convictions and sentences. The panel rejected defendant's arguments that the testifying police officers improperly offered opinion testimony that a drug transaction had taken place and that the prosecutor improperly assumed as a fact in the hypothetical question that

defendant distributed drugs to Atkinson.

The Supreme Court granted defendant's petition for certification. 220 N.J. 40 (2014). In addition, the Court requested that the parties "file supplemental briefs addressing the rationale and need for hypothetical questions in the trial of a drug case, and the circumstances under which such questions may be used."

**HELD:** The erroneously assumed fact in the hypothetical question -- that the object in defendant's hand was a bundle of heroin packets -- unfairly buttressed the State's case. It was for the jury to decide the identity of the object based on an examination of the totality of the evidence. The ultimate-issue testimony on conspiracy, moreover, impermissibly intruded into the jury's singular role as trier of fact.

1. Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." N.J.R.E. 702 (emphasis added). Expert testimony that "embraces an ultimate issue to be decided by the trier of fact," N.J.R.E. 704, is not admissible unless the subject matter is beyond the ken of the average juror. State v. Nesbitt, 185 N.J. 504, 515-16, 519 (2006). Expert testimony is not necessary to tell the jury the "obvious" or to resolve issues that the jury can figure out on its own. In addition, a prosecutor may not "summarize straightforward but disputed evidence in the form of a hypothetical and then elicit an expert opinion about what happened." State v. Sowell, 213 N.J. 89, 102 (2013). (pp. 12-13)

2. Detective Warner's testimony that Detective Ruzzo radioed at one point that he "was possibly observing a C.D.S. transaction" and at another point that "there was a C.D.S. transaction taking place" violated the precepts articulated in State v. McLean, 205 N.J. 438 (2011). The facts here, like in McLean, were simple and straightforward, and the jurors were fully capable of grasping the meaning of easy-to-understand facts and making their own deductions without the assistance of an expert in a simple drug-distribution case. (pp. 13-14)

3. The hypothetical question in this case required the drug expert to assume facts that were not established through testimony and the assumed facts answered the very issue the jury was charged to resolve -- whether defendant handed packets of heroin to the driver of the silver car in exchange for money. The jury was expected to resolve the disputed issue by "sorting through all the evidence and using their common sense to make simple logical deductions." State v. Cain, __ N.J. __ , __ (2016) (slip op. at 21-22). The assumed facts in the hypothetical undermined the jury's exclusive role as finder of fact. Jurors are able to assess the evidence "on their own, based upon common knowledge, experience, and logic." Sowell, supra, 213 N.J. at 105. (pp. 14-17)

4. The expert's opinion in this case directly bolstered not only the State's case against the co-defendant, but also the case against defendant by implicating him as the co-conspirator. If the co-defendant conspired with defendant, then defendant must have conspired with the co-defendant. The expert's mimicking the statutory language of conspiracy and his conclusion that defendant conspired to distribute heroin was, in effect, a pronouncement of guilt, and a repeat of the type of expert testimony that we disapproved in State v. Reeds, 197 N.J. 280 (2009). (pp. 17-19)

5. A hypothetical question in a drug case should not be used as a prosecutorial tool to sum up an entire case in a single question for the purpose of eliciting an expert's opinion on a defendant's guilt. Cain, supra, __ N.J. at __ (slip op. at 27). The practice of assuming in a hypothetical question an unnamed "individual" when every detail of the question makes clear the reference is to the defendant serves no purpose and will not dissipate the prejudice of inappropriate opinion testimony. Id. at __ (slip op. at 25). Straightforward facts that are not in dispute should not require a hypothetical, even when expert testimony may be of assistance to the jury. However, when facts are in dispute, and expert opinion testimony is appropriate, hypotheticals may play a useful role because the expert will be required to assume a fact that ultimately a jury will decide. Id. at __ (slip op. at 26). The hypothetical in this case, and the expert testimony that followed, trespassed into the exclusive domain of the jury. (pp. 19-22)

The judgment of the Appellate Division is **REVERSED**, defendant's conviction is **VACATED**, and the matter is **REMANDED** to the trial court for proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

   v.

YASIN SIMMS,

 Defendant-Appellant.


   Argued October 26, 2015 – Decided March 15, 2016

   On certification to the Superior Court,
   Appellate Division.

   Alicia J. Hubbard, Assistant Deputy Public
   Defender, argued the cause for appellant
   (Joseph E. Krakora, Public Defender,
   attorney).

   John J. Santoliquido, Assistant Prosecutor,
   argued the cause for respondent (James P.
   McClain, Atlantic County Prosecutor,
   attorney).

   Steven A. Yomtov, Deputy Attorney General,
   argued the cause for amicus curiae Acting
   Attorney General of New Jersey (John J.
   Hoffman, Acting Attorney General, attorney).


  JUSTICE ALBIN delivered the opinion of the Court.

  In State v. Cain, __ N.J. __ (2016), we determined that in

drug-distribution cases, an expert's opinion on the defendant's

state of mind -- whether the defendant possessed drugs with the

intent to distribute -- encroaches on the exclusive domain of

1

the jury as trier of fact.  After the jury is informed of "the significance of drug packaging and weight, scales and cutting agents, stash sites, the role of confederates, and other activities consistent with drug trafficking," "the average juror is well-equipped to make the final determination whether a defendant possessed the requisite mental state to commit a drug offense."  Cain, supra, __ N.J. at __ (slip op. at 2).

Expert testimony that a defendant possessed a controlled dangerous substance with the intent to distribute is nothing less than a pronouncement of guilt by mimicking the statutory elements of the offense.  Id. at __ (slip op. at 22).  Such testimony is not necessary to assist the jury.  Nor are unduly long and complex hypothetical questions that serve as mid-trial summations and unfairly bolster the State's case.

The case before us involves a joint trial of defendant and a co-defendant, both charged with and convicted of a number of drug offenses.  The lengthy hypothetical question posed to the drug expert included the assumed fact that the detective actually observed defendant hand a buyer drugs for cash.  That assumed fact, however, was not based on an actual fact because the detective observed only an unidentified object in defendant's hands.  The expert, moreover, expressed the opinion that the co-defendant conspired with defendant to distribute drugs, which was another way of saying that defendant conspired

2

with the co-defendant.  The Appellate Division affirmed defendant's various drug convictions.

We conclude that the admission of the expert testimony constituted plain error because it violated principles set forth in this Court's recent jurisprudence, including principles on which we further elaborated in Cain.  The erroneously assumed fact in the hypothetical question -- that the object in defendant's hand was a bundle of heroin packets -- unfairly buttressed the State's case.  It was for the jury to decide the identity of the object based on an examination of the totality of the evidence.  The ultimate-issue testimony on conspiracy, moreover, impermissibly intruded into the jury's singular role as trier of fact.  We are therefore compelled to reverse the judgment of the Appellate Division, vacate defendant's convictions, and remand for a new trial.

I.

A.

Defendant Yasin Simms and co-defendant Monae Butcher were tried jointly on various drug charges enumerated in an Atlantic County indictment.  At trial, the State elicited the following testimony relevant to this appeal.

On September 15, 2009, while conducting a drug surveillance of a public housing project in Atlantic City, Detective Michael Ruzzo of the Atlantic City Police Department observed a four-

3

door silver car park alongside a curb near the project. The driver of the car, later identified as Sean Atkinson, reclined in his seat so that his head was no longer visible, although he occasionally popped his head up to look around. Detective Ruzzo then radioed Atlantic City Police Detectives William Warner and James Barrett, who were nearby, stating that he had in his sight a male "waiting in the area to possibly buy C.D.S."

Shortly afterwards, a red car pulled directly in front of the silver car, so that the two vehicles faced each other nose-to-nose. Defendant, the driver of the red car, exited and approached the silver vehicle. Detective Ruzzo observed defendant lean into the open passenger's window of the silver car and hand "an object" to Atkinson in exchange for what the detective believed was "one bill of currency." Just as Detective Ruzzo radioed for Detectives Warner and Barrett "to move in," the two detectives arrived on the scene.[1]

Detective Warner saw defendant lean into the silver car and then walk away. He did not see an exchange between Atkinson and defendant. As defendant walked in the direction of Detectives Warner and Barrett, who had exited their vehicle, he placed

---

[1] Detective Warner testified that Detective Ruzzo radioed that he "was possibly observing a C.D.S. transaction" and that, after the red car pulled up, "there was a C.D.S. transaction taking place." No objection was raised to this testimony.

4

"something" in his back pocket. The detectives then took defendant into custody.

Detective Warner next approached the driver's side window of the silver car and observed "a bundle of heroin on the passenger-side seat." Atkinson was arrested, and ten packets of heroin stamped with the logo "Sweet Dreams" were seized from the car.

In the meantime, Detective Ruzzo walked toward the red car and observed Monae Butcher in the front passenger seat "stuffing something down the rear of her pants." He also took notice of an infant in the back seat. Detective Ruzzo ordered Butcher out of the car and called a female officer to assist after Butcher denied having any contraband on her. Before the female officer undertook a search, Butcher pulled from the back of her pants thirteen bags of heroin, also stamped with the logo "Sweet Dreams."

The police later recovered a $100 bill from defendant's rear pocket and an additional $56 from his person.

B.

At trial, the prosecutor presented Detective Kevin Lockett of the Atlantic County Prosecutor's Office as an expert "in the field of narcotics use and distribution as well as the accompanying aspects of narcotics distribution." The prosecutor posed the following hypothetical question:

I ask you to assume that all the facts I am giving you are true.

Assume that, assume that a vehicle, a silver vehicle, pulls up to the curb on a side street of [a public housing project] in Atlantic City. Assume that the occupant, the sole occupant, of that car, then bends his seat back, reclines it back so his head is invisible and waits there while at times picking his head up thusly.

Assume that a short time later, another car approaches and a red car parks head-to-head at a curb. Assume that there are two occupants of that red car, a female and a male. Assume that the male is driving and the female is a passenger.

Assume that the male driver leaves the red car and walks up to the silver car. Assume that the male leans into the passenger side of the silver car, hands the driver of the silver car ten packets of heroin and receives from the man in the silver car $100.

Assume that the male walks away from the car about ten or 15 steps and is arrested by police. Assume that on his person is a hundred dollar bill and $56 in a separate pocket, separate location of currency. Assume that the $56 is in the denominations of two twenties, three fives and one $1 bill.

Assume that the female passenger is sitting facing forward, the arrest a very short distance, possibly from me to you. Assume that the female passenger of the red car who arrived with the male is sitting watching the arrest. Assume that the female passenger stuffs 13 bags, 13 bags, packets, of heroin into the rear of her pants, the rear of her pants.

Assume that there is a total -- between the ten in the silver car and the 13 bags on the female passenger -- there's a total of 23

6

bags of heroin.

. . . .

Assume that the items in S-19 are the same as, appear the same as, for purposes of this hypothetical, assume that the 23 bags recovered appear as the bags in S-19. And I want you to take them out and put them all out one-by-one in front of you.

Assume that the ten bags that the male handed to the driver of the silver car in exchange for $100 and the 13 bags in the -- in the female's pants appeared the same as those bags. Are you able to [form] an opinion as to whether the female in possession of the 13 bags -- I'm sorry. I missed -- I missed two facts.

Assume additionally that there was nothing else in the -- in the pocket that held the hundred dollar bill that the male took from the sale. And assume that no use paraphernalia of any kind is in the possession of either the male or the female; no hypodermic syringes, no straws, no CDs with lines cut up; no use paraphernalia.

. . . .

Based on the facts that I have given you, are you able to form an opinion as to whether the 13 bags the female possessed, are you able to form an opinion as to whether the female possessed those 13 bags for personal use or distribution.

Detective Lockett responded: "Based on the facts that you've given me, that's consistent with the distribution. Based on those facts, . . . it appears consistent that the female may have conspired with the male or conspired with the male to distribute C.D.S. That would be my opinion on it." Defendant

7

did not object to the hypothetical question or to the response.

Defendant did not present any witnesses.

C.

The jury convicted defendant of third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); third-degree possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree distribution of heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of heroin with intent to distribute within a school zone, N.J.S.A. 2C:35-7; and second-degree possession of heroin with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-7.1. Defendant was found not guilty of third-degree conspiracy to distribute heroin, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5(b)(3).[2]

In light of defendant's prior convictions, the trial court imposed an extended term sentence of ten years with a five-year period of parole ineligibility for possession of heroin with intent to distribute within a school zone and a concurrent term of ten years with a five-year period of parole ineligibility for possession of heroin with intent to distribute within 500 feet of a public housing facility. The court also imposed applicable

---

[2] The jury convicted Butcher only of third-degree possession of heroin. She was acquitted of conspiracy to distribute heroin and a number of possession-with-intent-to-distribute charges.

fines and penalties. The remaining charges were merged.

Defendant appealed.

## II.

The Appellate Division affirmed defendant's convictions and sentences. The panel rejected defendant's arguments that the testifying police officers improperly offered opinion testimony that a drug transaction had taken place and that the prosecutor improperly assumed as a fact in the hypothetical question that defendant distributed drugs to Atkinson.

We granted defendant's petition for certification. State v. Simms, 220 N.J. 40 (2014). In addition, we requested that the parties "file supplemental briefs addressing the rationale and need for hypothetical questions in the trial of a drug case, and the circumstances under which such questions may be used." We also granted the Attorney General leave to participate as amicus curiae.

## III.

### A.

Defendant argues that Detective Ruzzo's radio calls that he "was possibly observing a C.D.S. transaction" and that "there was a C.D.S. transaction taking place" -- admitted through Detective Warner's testimony -- constituted impermissible opinion on an ultimate issue of fact.

Next, defendant contends that the prosecutor's hypothetical

9

question to the drug expert improperly assumed a fact not in evidence. Defendant points out that although Detective Ruzzo observed defendant hand only "an object" to Atkinson, the hypothetical asked the expert to assume that defendant gave ten packets of heroin to Atkinson for $100. Defendant maintains that it was for the jury to determine whether such a sale occurred.

Defendant, moreover, posits that because defendant was tried jointly with Butcher, he was prejudiced by the expert's opinion testimony that Butcher had conspired with defendant to distribute heroin. He maintains that disputed facts should have been reserved for the jury's determination.

Finally, defendant submits that (1) the use of the hypothetical to elicit ultimate-issue testimony from a drug expert, in this and other drug prosecutions, does not assist the jury in understanding the evidence, but rather invades its exclusive province as factfinder and (2) that an expert's opinion, which amounts to a declaration of guilt, causes prejudice that far outweighs the probative value of the testimony.[3]

### B.

The State counters that Detective Ruzzo's characterization

---

[3] Defendant also argues that his sentence was excessive, but we need not reach that issue.

of his observations of defendant -- as relayed through Detective Warner's testimony -- did not constitute opinion testimony. According to the State, Detective Ruzzo's call to Detective Warner that a "C.D.S. transaction was taking place" was simply a request that Warner enter the area for the purpose of detaining defendant and Atkinson, and therefore Detective Ruzzo's description was "the essence of fact testimony."

The State concedes "that its hypothetical question to its expert witness slightly exceeded the facts in evidence by referring to a sale of heroin." The State, however, claims that the misstep did not draw an objection and did not constitute plain error.

The State also maintains that the hypothetical question, which elicited from the expert an opinion that the co-defendant was engaged in a drug-distribution scheme, could not have adversely affected defendant because the jury acquitted the co-defendant of the drug-distribution charges.

Last, the State asserts that an expert witness should be permitted "to testify directly on the criminal nature of a drug defendant's conduct . . . premised on [the expert's] general knowledge of the illegal drug trade," provided it is made clear that the expert's opinion does not rest "on any special knowledge of the defendant's state of mind." The State "recommends that the use of hypothetical questions be permitted

but not required to elicit the opinion testimony."

### C.

The Attorney General, as amicus curiae, acknowledges that expert testimony is not necessary to assist the jury in determining "whether a simple narcotics transaction has taken place" and that "a detailed hypothetical precisely mirroring the State's evidence" should be impermissible where the defendant engages in a two-person drugs-for-cash deal. The Attorney General states, however, that carefully "crafted hypotheticals . . . . are a critical tool for the jury in understanding the evidence," allowing the expert to synthesize disparate facts and place them in context to explain the operation of a drug-distribution scheme.

### IV.

### A.

Expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will <u>assist</u> the trier of fact to understand the evidence or to determine a fact in issue." <u>N.J.R.E.</u> 702 (emphasis added). Expert testimony that "embraces an ultimate issue to be decided by the trier of fact," <u>N.J.R.E.</u> 704, is not admissible unless the subject matter is beyond the ken of the average juror. <u>State v. Nesbitt</u>, 185 <u>N.J.</u> 504, 515-16, 519 (2006).

From our evidence rules, we have established guiding

principles to ensure the proper use of opinion testimony in drug cases. Expert testimony is not necessary to tell the jury the "obvious" or to resolve issues that the jury can figure out on its own. Id. at 514. In other words, "[e]xpert testimony should be limited to areas that are beyond the understanding of the jury." State v. Sowell, 213 N.J. 89, 102 (2013). A prosecutor may not "summarize straightforward but disputed evidence in the form of a hypothetical and then elicit an expert opinion about what happened." Ibid. Such an "approach improperly bolsters the State's proofs with expert testimony and can usurp the jury's sole responsibility to find the facts." Ibid.

B.

In this case, Detective Ruzzo observed defendant lean into a car window and hand the driver "an object" in exchange for what appeared to be "one bill of currency." Shortly afterwards, ten packets of heroin with the logo "Sweet Dreams" were found on the passenger's seat of that car. Almost simultaneously, the police arrested the co-defendant, who was sitting in defendant's car in possession of thirteen packets of heroin stamped with the same logo.

Detective Warner testified that Detective Ruzzo radioed at one point that he "was possibly observing a C.D.S. transaction" and at another point that "there was a C.D.S. transaction taking

13

place."  That testimony violated the precepts articulated in State v. McLean, 205 N.J. 438 (2011).

In McLean, we reversed the defendant's possession-with-intent-to-distribute convictions because a testifying police officer, who observed the defendant hand only an item to an individual in exchange for money during a surveillance, expressed the opinion that a drug transaction had occurred.  Id. at 443, 463.  We came to that conclusion because the jurors were fully capable of grasping the meaning of easy-to-understand facts and making their own deductions without the assistance of an expert in a simple drug-distribution case.  Id. at 461.

The facts here, like in McLean, were simple and straightforward, and the jury was fully capable of deciding whether defendant engaged in an act of drug distribution.  No objection, however, was made to that testimony, which also constituted hearsay.  N.J.R.E. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").  We do not have to decide whether the admission of that testimony constituted plain error, however, because more serious errors plagued this trial.

C.

The hypothetical question in this case required the drug expert to assume facts that were not established through

14

testimony and that were hotly contested.  Indeed, the assumed facts answered the very issue the jury was charged to resolve -- whether defendant handed packets of heroin to the driver of the silver car in exchange for money.

The prosecutor asked the jury to assume that the driver of the red car (defendant) walks up to a silver car and "leans into the passenger side of the silver car, hands the driver of the silver car ten packets of heroin and receives from the man in the silver car $100."  The trial testimony, however, did not support this portion of the hypothetical.  As noted earlier, Detective Ruzzo saw only an object in defendant's hand.  The ultimate issue to be decided by the jury was whether the "object" was in fact the "ten packets of heroin."  The jury was expected to resolve the disputed issue by "sorting through all the evidence and using their common sense to make simple logical deductions."  Cain, supra, __ N.J. at __ (slip op. at 21-22). The assumed facts in the hypothetical undermined the jury's exclusive role as finder of fact.

The issue here is similar to one presented in Sowell, supra.  There, a corrections officer observed an individual take from her front pocket an "item" and place it in the hands of the defendant-inmate during a prison visit.  213 N.J. at 94.  The defendant then put the "item" in a bag of potato chips, which he laid under the seat next to him.  Ibid.  Afterwards, corrections

15

officers had the defendant empty the contents of the potato chip bag. The contents included a balloon containing thirty decks (glassine envelopes) of heroin. Ibid. The defense vigorously challenged the State's version of events. Id. at 97. Nevertheless, the prosecutor posed a hypothetical question to a drug expert reciting all the details observed by the corrections officers and then had the expert render an opinion "[t]hat a transaction or an exchange of narcotics took place" in the prison. Id. at 96-97.

We found that the expert's opinion did not meet the standard for admissibility of expert testimony. Id. at 104-07. That was so because "a straightforward transaction in which one person receives a packet of drugs from another and hides it in a bag of chips requires no expert interpretation." Id. at 105. In such a case, jurors are able to assess the evidence "on their own, based upon common knowledge, experience, and logic." Ibid. We warned that "the prosecution cannot call an expert to fill in gaps and clarify a transaction that jurors can understand on their own." Ibid. We did not reverse the defendant's convictions only because of the overwhelming evidence of guilt, which included the defendant's admissions and a videotape of the exchange. Id. at 107.

Even though defendant made no objection to the prosecutorial error highlighted here, that error was exacerbated

16

by the expert's ultimate-opinion testimony, to which we turn now.

D.

The expert witness in this case, Detective Lockett, expressed the opinion that the thirteen packets of heroin found in the possession of the co-defendant sitting in defendant's car were not only consistent with distribution, but also that it appeared that she had "conspired with the male to distribute C.D.S." No one disputes that the male referred to was defendant. The expert's opinion directly bolstered not only the State's case against the co-defendant, but also the case against defendant by implicating him as the co-conspirator. Surely, if the co-defendant conspired with defendant, then defendant must have conspired with the co-defendant. The expert's mimicking the statutory language of conspiracy and his conclusion that defendant conspired to distribute heroin was, in effect, a pronouncement of guilt, and a repeat of the type of expert testimony that we disapproved in State v. Reeds, 197 N.J. 280 (2009).

In that case, the defendant was convicted of possession of heroin and possession with intent to distribute. Id. at 289. At trial, in response to a hypothetical question posed by the prosecutor, the police expert offered the opinion that the defendant and the two occupants in the defendant's car

17

constructively possessed heroin with intent to distribute based on the quantity of heroin found in the car after a police stop. Id. at 286-88. We held that "the expert's constructive possession opinion was tantamount to a legal conclusion, resulting in a veritable pronouncement of guilt on the two possession crimes." Id. at 297. We also observed that "by mimicking the language of the statute . . . the expert's testimony on constructive possession of drugs" was neither probative nor helpful to the jury. Id. at 296-97. In reversing the defendant's conviction on the basis of plain error, we concluded that the expert's "ultimate-issue testimony usurped the jury's singular role" as finder of fact and "was clearly capable of producing an unjust result." Id. at 300-01.

There is no meaningful difference between the flawed expert testimony in Reeds and the expert testimony challenged in this case. In both cases, by tracking the statutory language, the experts rendered an ultimate-issue opinion expressing a belief in the guilt of the defendants. As in Reeds, here, the use of a narcotics expert was not necessary to tell the jury the "obvious" in the case of "a straightforward" vehicle search. See id. at 293, 299 (quoting Nesbitt, supra, 185 N.J. at 514). As in Reeds, the prejudicial testimony here did not draw an objection.

Nevertheless, the cumulative effect of the errors in the

18

present case were "clearly capable of producing an unjust result," R. 2:10-2, requiring a reversal of defendant's convictions.  See State v. Weaver, 219 N.J. 131, 155 (2014) (noting duty of this Court to reverse conviction "[w]hen legal errors cumulatively render a trial unfair").

V.

The parties and amicus Attorney General filed briefs "addressing the rationale and need for hypothetical questions in the trial of a drug case, and the circumstances under which such questions may be used."  Our response to that issue in Cain obviates the need for a detailed discussion here.  But certain principles enunciated in Cain bear repeating because they have direct application to the facts before us.

"To the extent possible, questions posed to an expert witness in a drug case should be compact and easy to understand . . . .  [S]implicity in sentence structure will be helpful to the witness and the jury."  Cain, supra, __ N.J. at __ (slip op. at 27).  A hypothetical question in a drug case should not be used as a prosecutorial tool to sum up an entire case in a single question for the purpose of eliciting an expert's opinion on a defendant's guilt.  Ibid.  The practice of assuming in a hypothetical question an unnamed "individual" when every detail of the question makes clear the reference is to the defendant serves no purpose and will not dissipate the prejudice of

19

inappropriate opinion testimony. Id. at __ (slip op. at 25).

After the jury is informed about the significance of evidence that requires the assistance of expert testimony, such as quantity and packaging of drugs, and other indicia of drug distribution not commonly understood by lay persons, jurors are capable of processing the information received at trial, of drawing inferences, and making logical deductions in carrying out their duties as the ultimate finders of fact. Id. at __ (slip op. at 20-22).

Straightforward facts that are not in dispute should not require a hypothetical, even when expert testimony may be of assistance to the jury. Id. at __ (slip op. at 25). For instance, in this case, the ten bags of heroin found in Atkinson's car and the thirteen bags of heroin seized from the co-defendant each bore the logo "Sweet Dreams." Without the use of a hypothetical, the expert could have explained the purpose of stamping a logo on drug packaging and whether a particular logo can be attributed to a singular dealer or drug operation. See United States v. Mejia, 448 F.3d 436, 441 (D.C. Cir. 2006) (noting expert's testimony on significance of "drug logos associated with the packaging of cocaine"), cert. denied, 549 U.S. 1137, 127 S. Ct. 989, 166 L. Ed. 2d 747 (2007). However, when facts are in dispute, and expert opinion testimony is appropriate, hypotheticals may play a useful role because the

20

expert will be required to assume a fact that ultimately a jury will decide.  See Cain, supra, __ N.J. at __ (slip op at 26).

The hypothetical in this case, like the hypothetical in Cain, supra, __ N.J. at __ (slip op. at 37-39), and the expert testimony that followed, trespassed into the exclusive domain of the jury.  The jurors did not need the assistance of an expert to determine whether defendant handed the packets of heroin to the driver of the silver car after the detective testified that defendant passed "an object" in exchange for currency.  The inferences to be drawn from those facts were for the jury, after a review of all of the evidence in the case.  Whether defendant and the co-defendant conspired to distribute drugs was an ultimate issue of fact for the jury, not a proper subject for expert testimony.  The hypothetical in this case, like in Cain, served as a mid-trial summation, allowing the prosecutor to improperly bolster the straightforward facts of the State's case with expert testimony.

When the ultimate issue of fact in a drug case is the defendant's state of mind or an issue that the average juror can resolve without assistance, expert testimony is not permissible. The discussion here and in Cain should provide guidance in the appropriate use of hypotheticals and expert testimony in drug cases.

VI.

21

For the reasons expressed, we reverse the judgment of the Appellate Division and vacate defendant's convictions.  We remand to the trial court for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN's opinion.  JUSTICE FERNANDEZ-VINA did not participate.

SUPREME COURT OF NEW JERSEY

NO.    A-14                        SEPTEMBER TERM 2014

ON CERTIFICATION TO      Appellate Division, Superior Court


STATE OF NEW JERSEY,

      Plaintiff-Respondent,

            v.

YASIN SIMMS,

      Defendant-Appellant.


DECIDED          March 15, 2016
          Chief Justice Rabner                     PRESIDING
OPINION BY      Justice Albin
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE/ VACATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ---------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |