**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5599-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SHARRON GADDY,

     Defendant-Appellant.

_____

Submitted June 5, 2019 – Decided July 3, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-10-0685.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).

Jennifer Davenport, Acting Prosecutor of Union County, attorney for respondent (Milton Samuel Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a jury trial, defendant appeals from his June 12, 2017 conviction and sentence of eighteen years in prison with six years of parole ineligibility for third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(l), and second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(l) and (b)(3). Defendant argues on appeal that the State engaged in prosecutorial misconduct and his sentence is excessive. After reviewing the record in light of the contentions advanced on appeal, we affirm.

The following facts were revealed at trial. On May 16, 2015, Plainfield Police Sergeant Christopher Fortunka and eight other officers conducted surveillance of defendant's home. A black Acura MDX was parked in front of the house. A SUV drove up to the house, defendant came outside, and the driver of the SUV exited his vehicle. The two spoke and entered the house.

After watching the house for more than an hour, the officers approached the home with a search warrant. The storm door was closed, but the front door remained open. When they announced they were the police, defendant locked both doors. The front door had a frosted window, allowing the officers to see a "shadow" heading up the stairs. After trying unsuccessfully to open the locked doors, the police used a battering ram to enter.

Upon entering the house, Fortunka and another officer went upstairs to follow the "shadow." They saw defendant coming from the bathroom. Defendant said he had just flushed marijuana down the toilet. After defendant was arrested, a small bag of marijuana in the basement bedroom was found.

In the master bedroom, Fortunka found "[a] small amount of cocaine . . . drug paraphernalia, [and] money." He found a container with "eight tin-foil folds [of] suspected CDS [(controlled dangerous substance)] and one knotted bag of suspected CDS"; "three small black digital scales" with "white powdery residue"; "a roll of tin foil and pre-cut small pieces of tin foil"; a safe containing $8427 in the master bedroom closet; and defendant's expired driver's license. More than $1600 was also found in jars.

When arrested, defendant had on his person keys to the safe and the Acura MDX, a phone and $459. With a warrant to search the Acura MDX, Fortunka found in the center console a "green change purse containing [forty-five] tin-foil folds of suspected CDS, a sandwich bag containing [sixteen] tin-foil folds [of] suspected CDS, and another sandwich bag containing [eleven] tin-foil folds of suspected CDS."

At trial, Union County Prosecutor's Office Detective Kevin Kolbeck, Jr. testified as an expert in "the field of identification, packaging, use, sale, and

distribution of controlled dangerous substances" about the packaging and pricing of cocaine for street level distribution and personal use. Margaret Cuthbert, a Union County Prosecutor's Office Forensic Laboratory scientist, provided expert testimony that the seventy-two foils and three scales were submitted for tests and contained 1.29 ounces of cocaine.

Defendant's wife, K.,[1] testified that she lived at the house with defendant, their three daughters, and her half-brother, who had been living at the house since 2012. Her brother lived in a bedroom in the basement, which had a separate bathroom. K. stated he was addicted to drugs and she did not want him to be near her daughters.

K. also testified that the money in the jars was "savings for vacations." At the time of his arrest, defendant was working for a company where he was paid "under the table" with cash. K. explained that both she and defendant had keys to the safe. The safe had "money, passports and other documents" inside, and the money found inside the safe was not drug proceeds.

The family had three vehicles registered in her name: a Mercedes, an Acura MDX, and an Acura RL. K., her two older daughters, and defendant

---

[1] We use an initial to preserve the privacy of defendant's wife.

drove all three cars. She drove the Acura MDX on the day before defendant's arrest and did not see any drugs in the car.

Defendant raises the following issues on appeal:

POINT I: THE STATE CONSISTENTLY ENGAGED IN PROSECUTORIAL MISCONDUCT IN PRESENTING ITS CASE TO THE JURY.

A. THE TESTIMONY OF THE STATE'S NARCOTICS EXPERT WAS IN VIOLATION OF THE CAIN/SIMMS RULE THAT A STATE EXPERT IN A DRUG CASE SHOULD NOT IMPLICITLY EXPRESS THE OPINION THAT THE DEFENDANT IS GUILTY (NOT RAISED BELOW).

B. THE TESTIMONY OF A DETECTIVE THAT HE SEIZED MONEY FROM DEFENDANT'S HOME "BECAUSE . . . I BELIEVE IT'S EVIDENCE OF DRUG DEALING" WAS IN VIOLATION OF THE RULE OF MCLEAN THAT A STATE'S LAY WITNESS SHOULD NOT OFFER OPINIONS TO THE JURY ON THE SIGNIFICANCE OF EVIDENCE IN A DRUG CASE (NOT RAISED BELOW).

C. THE JUDGE IMPROPERLY OVERRULED DEFENSE COUNSEL'S OBJECTION TO THE STATE'S ARGUMENT IN SUMMATION THAT THE DEFENSE IN THE CASE "RELIES, ALMOST DEMANDS, THAT YOU FIND THE OFFICERS TO BE LIARS FOR THE MERE FACT THAT THEY'RE POLICE OFFICERS."

POINT II: THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE; THE SAME OFFENSE THAT TRIGGERED THE EXTENDED TERM WAS

DOUBLE-COUNTED AGAINST DEFENDANT IN SETTING THE LENGTH OF THAT TERM.

## I. Prosecutorial Misconduct.

### A.

A reversal based on prosecutorial misconduct requires a determination that the defendant's right to a fair trial was prejudiced by the State's improper conduct. State v. Jackson, 211 N.J. 394, 407 (2012). "To justify reversal, the prosecutor's conduct must have been 'clearly and unmistakably improper,' and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 575 (1999) (quoting State v. Roach, 146 N.J. 208, 219 (1996)). "In determining whether the prosecutor's comments were sufficiently egregious to deny defendant a fair trial, we consider the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." Id. at 575. "Factors to consider when analyzing prosecutorial conduct include whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the court gave a limiting instruction." State v. Chew, 150 N.J. 30, 84 (1997).

Defendant argues for the first time on appeal that Kolbeck, the State's drug expert, improperly opined that defendant was guilty. If an error was not brought

6

to the trial court's attention, a reviewing court will not reverse unless the appellant demonstrates error "clearly capable of producing an unjust result." R. 2:10-2. "[W]hen counsel does not make a timely objection at trial, it is a sign 'that defense counsel did not believe the remarks were prejudicial' when they were made." State v. Pressley, 232 N.J. 587, 594 (2018) (quoting State v. Echols, 199 N.J. 344, 360 (2009)). A "[d]efendant's lack of objections . . . weighs against [the] defendant's claim that errors were 'clear' or 'obvious.' Indeed, '[i]t [is] fair to infer from the failure to object below that in the context of the trial the error was actually of no moment.'" State v. Nelson, 173 N.J. 417, 471 (2002) (second and third alterations in original) (quoting State v. Macon, 57 N.J. 325, 333 (1971)).

Defendant points out Kolbeck's testimony that: (1) he "never encountered an individual with [sixty] foil folds of cocaine for their personal use"; (2) the residue on the scales that were found "would show, obviously, that the individual was weighing out some kind of CDS, which would be cocaine, for -- in my opinion, it would be . . . for packaging of the CDS that was also found"; and (3) the money that was found "just basically . . . shows . . . the product that they made, how much money that they've previously made. And, obviously,

A-5599-16T4

that money can be used to go purchase more CDS, which would then be packaged and then sold on the street."

"[I]n drug cases, an expert witness may not opine on the defendant's state of mind. Whether a defendant possessed a controlled dangerous substance with the intent to distribute is an ultimate issue of fact to be decided by the jury." State v. Cain, 224 N.J. 410, 429 (2016). In State v. Simms, 224 N.J. 393, 406-07 (2016), our Supreme Court found the cumulative effect of expert testimony on evidence that the jury could have evaluated based on common knowledge combined with "expert ultimate-opinion testimony" constituted plain error. There, the expert witness improperly bolstered the State's case by opining "the thirteen packets of heroin found in the possession of the co-defendant sitting in defendant's car were . . . consistent with distribution, [and] it appeared that she had 'conspired with the male to distribute C.D.S.'" Id. at 406. "The expert's mimicking the statutory language of conspiracy and his conclusion that defendant conspired to distribute heroin was, in effect, a pronouncement of guilt . . . ." Ibid.

Our Supreme Court described proper expert testimony in drug cases:

> Law enforcement officers with extensive training, education, and experience of the drug world have "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in

issue." Experts can help jurors understand the indicia of a distribution operation, such as how drug traffickers package and process drugs for distribution. Experts can shed light on the significance of the quantities and concentrations of drugs, the value of drugs, the use of identifiable logos on drug packaging, and the function of drug paraphernalia, e.g., scales, baggies, and cutting agents.

[Cain, 224 N.J. at 426 (alteration in original) (citations omitted) (quoting N.J.R.E. 702).]

Detective Kolbeck's testimony that he had "never encountered an individual with [sixty] foil folds of cocaine for their personal use" was consistent with explaining "the significance of the quantities and concentrations of drugs." Ibid. Kolbeck's testimony that the residue on the scales indicated cocaine had been weighed for packaging was permissible because an expert may testify about "the function of drug paraphernalia, e.g., scales." Ibid.

Finally, Kolbeck's testimony concerning the money that was found provided some "insight into the roles played by individuals in street-level drug transactions." Cain, 224 N.J. at 426. On cross-examination, defense counsel thoroughly questioned Kolbeck regarding the money seized, eliciting that he did not know where it came from and had no personal knowledge that the money was "drug money." Kolbeck's conclusion concerning the money, while perhaps not entirely appropriate, was not sufficiently egregious to constitute plain error.

9

See R. 2:10-2. Kolbeck's testimony does not rise to the level of "expert ultimate-opinion testimony" that constituted plain error in <u>Simms</u>, 224 N.J. at 406-07.

B.

Fortunka's response when the State asked why he seized the money found in defendant's house and car was: "Because . . . I believe it's evidence of drug dealing." Defendant argues, without having registered an objection at trial, that this statement prejudiced his trial. In <u>State v. McLean</u>, 205 N.J. 438, 443 (2011), our Supreme Court reversed the defendant's conviction because "permitting the officer to testify about his opinion invaded the fact-finding province of the jury . . . ." There, an officer testified as a lay witness about the "hand-to-hand drug transaction" that he believed took place based on his experience of witnessing past drug transactions. <u>Id.</u> at 445-46. The Court concluded:

> [T]he testimony of the police detective, because it was elicited by a question that referred to the officer's training, education and experience, in actuality called for an impermissible expert opinion. To the extent that it might have been offered as a lay opinion, it was impermissible both because it was an expression of a belief in defendant's guilt and because it presumed to give an opinion on matters that were not beyond the understanding of the jury. In the final analysis, the approach taken to this testimony by the trial court and the Appellate Division would effectively authorize an officer both to describe the facts about what he or she observed and to opine in ways that we have precluded

10

previously. We decline to permit the lay opinion rule to be so utilized.

[Id. at 463.]

See also State v. Reeds, 197 N.J. 280, 284-85 (2009) (finding plain error and reversing the defendant's conviction where an officer testified in response to a hypothetical that in his opinion defendant constructively possessed the drugs found in the car he was driving, an ultimate issue for the jury).

The jury did not require Fortunka's testimony to draw a conclusion that the money found in the house came from drug sales. On cross-examination, defense counsel elicited from Fortunka that money is not unlawful on its face, and the money could be from defendant's job. Although unfortunate, Fortunka's response concerning the money did not constitute plain error.

## C.

The trial court overruled defendant's objection to the prosecutor's statement during summation that the defense "relies, almost demands, that you find the officers to be liars for the mere fact that they're police officers." Defendant argues the statement impermissibly "criticize[d] defense counsel for doing her job."

Where error was brought to the trial court's attention, the "error is harmless unless, in light of the record as a whole, there is a 'possibility that it

11

led to an unjust verdict' -- that is, a possibility 'sufficient to raise a reasonable doubt' that 'the error led the jury to a result it otherwise might not have reached.'" State v. J.L.G., 234 N.J. 265, 306 (2018) (quoting Macon, 57 N.J. at 335) (finding error harmless "in light of the overwhelming evidence of defendant's guilt").

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented. Indeed, prosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries." State v. Frost, 158 N.J. 76, 82 (1999) (citation omitted). However, prosecutors may not "contend that the police have no motive to lie or face special consequences if they do." State v. Riviera 437 N.J. Super. 434, 446 (App. Div. 2014). In Frost, the Court found egregious "the prosecutor's suggestion that the police officers would not lie because of the 'magnitude' of charges that could be brought against them" and noted: "Our courts have consistently held that such statements by a prosecutor about a police officer's credibility are wholly inappropriate." 158 N.J. at 85.

Defense counsel's closing highlighted discrepancies between the officers' testimony, alleged that the experts tailored their testimony to the State's theory,

and stated that Fortunka was "full of crap." Thus, the State's characterization that defense counsel was essentially demanding that the jurors find the officers not credible is a permissible response to defense counsel's closing. See State v. McGuire, 419 N.J. Super. 88, 145 (App. Div. 2011) ("A prosecutor's otherwise prejudicial arguments may be deemed harmless if made in response to defense arguments."). Thus, we find no prosecutorial misconduct in the summation or testimony, and certainly none that constitutes reversible error.

## II. The Sentence.

"Appellate review of a criminal sentence is limited; a reviewing court decides whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). Defendant argues the trial court engaged in impermissible double-counting while imposing a mandatory extended prison term for possession of cocaine with intent to distribute after a prior distribution-related conviction, pursuant to N.J.S.A. 2C:43-6(f). Defendant, however, had prior drug convictions in three different states.

Defendant was sentenced to eighteen years in prison with six years of parole ineligibility. The sentencing court found no mitigating factors and the following aggravating factors: defendant's risk of recidivism, N.J.S.A. 2C:44-

1(a)(3), prior record, N.J.S.A. 2C:44-1(a)(6), and the need to deter, N.J.S.A. 2C:44-1(a)(9). Defendant argues that because his prior record was cited to justify all three aggravating factors, and his prior record includes the same drug-distribution offense that triggered the imposition of the extended term, the trial court engaged in improper double-counting, especially because the charge involved "only a little over an ounce of cocaine."

The sentencing court must "state on the record the reasons for imposing the sentence . . . ." N.J.S.A. 2C:43-2(e); see also State v. Fuentes, 217 N.J. 57, 74 (2014) (finding that "[a] careful statement of reasons . . . facilitates appellate review"). In determining whether a sentence is excessive, "[t]he reviewing court is expected to assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

If the State applies for an extended term and the defendant has one prior drug conviction of the type described, the court must impose an extended term. N.J.S.A. 2C:43-6(f). In State v. Thomas, 188 N.J. 137, 149, 153-54 (2006), our Supreme Court discussed aggravating factors in the context of N.J.S.A. 2C:43-6(f) mandatory extended-term sentencing:

implicit in a sentencing court's assessment of the defendant's risk of recidivism (factor (3)), the seriousness and extent of a defendant's prior criminal record (factor (6)), and the need to deter defendant and others (factor (9)) is a qualitative assessment that we want and expect the court to make. A court's findings assessing the seriousness of a criminal record, the predictive assessment of chances of recidivism, and the need to deter the defendant and others from criminal activity, do all relate to recidivism, <u>but also involve determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual in light of his or her history.</u>

[<u>Id.</u> at 153 (emphasis added).]

Thus, a sentencing court may consider aggravating factors three, six and nine in the context of a mandatory extended term because they "can be based on [an] assessment of a defendant beyond the mere fact of a prior conviction . . . ." <u>Id.</u> at 154; N.J.S.A. 2C:44-1(a)(3), (6), (9).

The sentencing court explained its reasoning regarding the aggravating factors:

I've carefully considered the argument of counsel and the entire court record in this matter. [I] find [a]ggravating [f]actors [three], [six] and [nine]. I find [a]ggravating [f]actor [three], that the defendant poses a risk that he will commit another offense, in light of his prior drug use and his admitted ongoing drug use, and the multiple similar crimes that he's already been adjudged previously, drug-related offenses.

I find [a]ggravating [f]actor [six]. I've considered the extent of defendant's prior criminal record, which is extensive, and the seriousness of the offenses of which he's been convicted. He's been convicted of a prior second-degree eluding and a prior second-degree drug-related offense. He's had two violations of probation and multiple prison stints in multiple jurisdictions.

As to deterrence, [a]ggravating [f]actor [number] [nine], the need to deter the defendant and others from violating the law. If ever there was an obvious case which begs for deterrence it's this one, and -- and Mr. Gaddy has a -- you know, we refer to it as a checkered past, but that really doesn't do justice to it. He's got an extensive prior criminal record. There's no way to sanitize that and it dates back to the late 1980s. I would say that Mr. Gaddy has been afforded virtually every sort of consideration . . . lengthy prison sentences, modest prison sentences, parole, probation and the like.

The trial court carefully weighed the aggravating and mitigating factors in light of defendant's particular circumstances, without double counting the one prior drug conviction needed for an extended term. Defendant had more convictions than were necessary for a mandatory extended term, and the court did not err in considering defendant's extensive prior criminal record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16