# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3981-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HELECIA L. MORRIS, a/k/a
HELECIA L. MORRIS-JUNG,

    Defendant-Appellant.

_____

Submitted March 24, 2025 – Decided July 8, 2025

Before Judges Sabatino, Jacobs, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 21-02-0252 and 21-06-0786, and Accusation No. 23-06-1068.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Laura B. Lasota, Deputy Public Defender II, of counsel and on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Helecia L. Morris appeals both her conviction and sentence for second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2) following a jury trial. Having reviewed the record and the applicable legal standards, we affirm both.

I.

On February 25, 2021, an Ocean County grand jury indicted defendant and her spouse[1] for one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2). This conviction stemmed from defendant's abuse of her biological son, H.L.[2]

We recite the facts gleaned from the transcripts of the three-day trial. Beginning when he was six years old, defendant locked H.L. in an empty room with a hinge lock installed on the outside of the door combined with the doorknob reversed to lock from the outside. Because of his imprisonment, H.L. was forced to urinate in the air floor vents and to defecate in his pants. Defendant withheld food from H.L. and would only permit him to take cold

---

[1] Co-defendant Donna J. Jung, defendant's spouse, was also indicted and convicted of endangering the welfare of a child. Jung has not appealed.

[2] We refer to the victim and his foster mother by initials to protect their identities. R. 1:38-3(c)(12).

A-3981-22

showers under supervision. To force H.L. to stop flicking the lights on and off in the room, his only source of "fun," defendant removed them completely. H.L.'s room was devoid of furniture and defendant refused to provide him with any toys. Defendant also beat H.L. with a belt.

The abuse was discovered after H.L. was told to remain seated by his first-grade teacher, but he was unable to do so because of the beatings. That teacher notified Denise Wirth, a school counselor, who contacted the Division of Child Protection and Permanency ("the Division"). An intake caseworker, Kristen Veith, investigated the allegations.

Veith observed signs of physical abuse on H.L. including "bluish and red marks" on his legs and buttocks. Veith also interviewed defendant who admitted striking H.L., but only with her hand and not with any object. Following her observations, Veith arranged for H.L. to be examined by a physician.

Steven Kairys, M.D. performed this evaluation the following day. H.L. admitted to Dr. Kairys that defendant hit him with a belt multiple times. H.L.'s physical examination revealed:

> [M]ore than [fifteen] to [twenty] bruises on his buttocks and his lower back and along the thigh, below the hip. They were mostly on the lateral surface of the thigh, all on the right side. Some of

3

them were round, some of them were linear meaning actual three- to-four-inch marks across. There was some, a few areas that were abrasions which means the skin itself was actually disrupted, not just a bruise which is a disruption of the blood vessels underneath the skin, but actually some, like a laceration, abrasion, breakage of the skin in several spots.

Dr. Kairys ultimately concluded H.L.'s injuries were consistent with the use of an object rather than a hand. Specifically, he noted H.L.'s linear bruises, in particular, were "very consistent by being hit with a cord or belt or some instrument such as that" and this was "very consistent with his story of being hit by a belt."

The Division implemented a safety plan that included supervision by the co-defendant combined with monthly supervisory Division visits. Therapeutic services were also recommended for H.L. Ultimately, after approximately five months, the Division concluded that the home was safe and closed its case.

Four months later, Wirth learned that H.L. had been absent from school for three days and on the fourth day of absence, learned it was because H.L. was punched by Jung and his mouth was bleeding. Wirth again contacted the Division.

The Division dispatched their investigator, Daniel Transue, to remove H.L. from the defendant's care and home. Accompanied by Brick Township

4

Police Officer Anthony DeMaio, Transue and DeMaio met Jung at the door of the home. Jung admitted the pair into the house and led them upstairs to the kitchen. Transue observed Jung go to a door off the kitchen and heard her "jiggling with a lock," while DeMaio similarly heard the noise of "metal moving metal, grinding metal." Both observed a hook latch on the door adjacent to the kitchen with a reversed doorknob. Transue also observed a large padlock installed on the refrigerator.

When the door to the room was opened, Transue testified:

> I found [H.L.] to be in there by himself. The room was pitch-black. I noticed that there was no electricity, all he had was a blanket and a pillow. The window was, there was a board in the window so he couldn't open the window. There [were] no bulbs in the light overhead, the heat was all duct taped, the room smelled of urine.

Transue noticed H.L.'s lip was lacerated but he looked happy and relieved the caseworker and police officer found him. Officer DeMaio testified the smell of urine in the room was "overbearing." He also noted the doors to the other children's rooms in the apartment did not have similar lock configurations as were installed on H.L.'s door, and those rooms were both furnished and decorated.

5

Transue removed H.L. and the two other minor children from defendant's home and brought H.L. to the hospital for another physical examination. Additionally, the Division referred the matter to the Special Victims Unit of the Ocean County Prosecutor's Office. Sergeant Jason Steele later obtained a search warrant for the premises. As part of the search, the officers discovered an inoperable security camera installed on top of the kitchen cabinets and detected the "very powerful odor of urine" that was prevalent in the kitchen by H.L.'s room. Following the execution of the search warrant, defendants were arrested.

Dr. Kairys examined H.L. a second time and noted that he was thin, small for his age, and substantially underweight. H.L. also told Dr. Kairys that he had not received the therapeutic services the Division recommended.

Defendant was indicted and proceeded to trial before a jury.

At trial, the State called and sought to qualify Dr. Kairys as an expert in pediatric medicine and medical child abuse. Over defendant's objection, the court accepted him as an expert in the proffered disciplines, but instructed on the limitation of his testimony:

> [H]e can testify to, certainly as a fact witness as to his observations and what the child said, if that's in the context of the diagnosis and treatment. But he can't, his testimony can't go into the purview of what the,

what's in the jury's purview, and that is whether this was excessive corporal punishment.

So I'm not going to allow him to say that in his medical opinion that it's excessive. He can testify whether or not the bruising, as you said, is consistent with a hand or an object or, I'm not even sure that that's an issue since both defendants have said it was a belt, even though one -- anyway, but he can, he can testify to what his opinion is as to what caused the bruising, assuming that he's qualified to do so, but I'm not going to let him give an opinion that this was child abuse or that striking, the strike to the face was excessive. That's not, that's not in his purview, that's in the jury's purview, and I don't want the jury getting confused as to what their job is.

However, during the State's direct examination, this colloquy occurred:

Q: Thank you, Doctor. Now, did you make any recommendations as a result of your examination with [H.L.]?

A: My assessment was that he was physically abused.

Q: Did you make any recommendation as a follow-up or anything of that nature?

A: Well, in general, once I make my recommendations, the hope is that he's kept safe until it gets adjudicated, so that's what I always –

Defense counsel objected and following the objection, counsel moved for a mistrial and argued that Dr. Kairys improperly voiced an opinion about

A-3981-22

the ultimate issue in the case. The trial judge denied the application, and provided this limiting instruction to the jury:

> So for the jury, you are to disregard the witness' statement regarding the last statement he made regarding the child being safe until the matter is adjudicated. It doesn't really have a bearing on this case. Again, the doctor testified that, about his opinion regarding child abuse. That whether or not the State proves its case against these defendants beyond a reasonable doubt is within your purview, okay? An expert, any expert cannot make the determination for the jury, okay? It's your job to decide the facts and to decide whether the State has made its burden as to the elements of what these defendants are charged with, okay?

After two days of testimony, over ninety photos submitted to the jury of H.L.'s physical and living conditions, and ninety minutes of deliberation, defendant was found guilty of endangering the welfare of a child.

At sentencing a month and a half later, defendant's counsel argued the court should consider several mitigating factors including defendant's lack of prior criminal history, the fact her poor parenting was due to her own limited abilities and mental health issues, and the idea that such actions were unlikely to reoccur. Defendant also addressed the court to "express [her] remorse."

The prosecutor read a letter from the victim's maternal grandmother that described the extensive and lasting harm H.L. suffered. The State argued for

A-3981-22

strong application of aggravating factors, particularly emphasizing the cruelty and serious harm of the offenses and defendant's clear lack of remorse displayed during the trial.

The judge considered both aggravating and mitigating factors in detail, and ultimately found that aggravating factors one (the nature and circumstances of the offense including whether it was committed in an especially heinous, cruel, or depraved manner) and two (the gravity and seriousness of harm inflicted on the victim including whether defendant knew of the victim's vulnerability) deserved substantial weight because the abuse of H.L. was repeated and quite severe for a child of his age. The judge did not find any grounds to find any mitigating factors. Ultimately, the judge concluded the aggravating factors substantively outweighed the mitigating ones and imposed an eight-year prison sentence, a disposition that fell within the statutory range of this second-degree crime.

Defendant appealed and raises three issues for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL AFTER THE STATE'S EXPERT WITNESS PROVIDED ULTIMATE-ISSUE OPINION TESTIMONY.

9

POINT II

THE PROSECUTOR'S COMMENTS DURING SUMMATION DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT III

THE SENTENCING COURT RELIED ON INAPPROPRIATE AGGRAVATING FACTORS WHEN IT IMPOSED AN EIGHT-YEAR PRISON TERM FOR DEFENDANT'S ENDANGERING CONVICTION.

## II.

We begin by stating the standard of review that governs the alleged trial errors argued on appeal. Ordinarily, we "will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interest of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, we review a trial court's legal conclusions de novo. State v. Hubbard, 222 N.J. 249, 263 (2015). In light of these principles, we conclude the trial judge properly exercised her discretion when she denied defendant's request for a mistrial, the prosecutor's comments in summation did not deprive defendant of a fair trial, and defendant was sentenced properly after a consideration of the aggravating and mitigating factors.

A-3981-22

## A.

Defendant argues that the trial judge should have granted her application for a mistrial because the testimony of the State's expert witness overstepped the boundaries of expert testimony and improperly suggested defendant's guilt. We disagree.

When considering a motion for a mistrial, courts should consider the "unique circumstances of the case." State v. Smith, 224 N.J. 36, 47 (2016) (citing State v. Allah, 170 N.J. 269, 280 (2002); State v. Loyal, 164 N.J. 418, 435-36 (2000)). "If there is 'an appropriate alternative course of action,' a mistrial is not a proper exercise of discretion." Ibid. (quoting Allah, 170 N.J. at 281). Where inadmissible evidence has been introduced, the judge must consider whether it may be addressed by a "cautionary or limiting instruction" or whether it "requires the more severe response of a mistrial . . . ." State v. L.P., 352 N.J. Super. 369, 379 (App. Div. 2002) (quoting State v. Winter, 96 N.J. 640, 646-47 (1984)).

"Evidence that bears directly on the ultimate issue before the jury may be less suitable to curative or limiting instructions than evidence that is indirect and that requires additional logical linkages." State v. Herbert, 457 N.J. Super. 490, 505 (App. Div. 2019). These factors should be considered

11

when determining the adequacy of a curative instruction: (1) "the nature of the inadmissible evidence the jury heard, and its prejudicial effect," (2) "an instruction's timing and substance affect its likelihood of success," and (3) a court's "tolerance for the risk of imperfect compliance." Id. at 505-08. However, "[t]he authority is abundant that courts presume juries follow instructions." Id. at 503. And, it is recognized

> that "[t]rials are not perfectly orchestrated productions." State v. Yough, 208 N.J. 385, 388 (2011). A curative instruction that is "firm, clear, and accomplished without delay" can be an appropriate remedy to a trial court's error in admitting proscribed evidence, [State v. Prall, 231 N.J. 567, 586 (2018)] (quoting State v. Vallejo, 198 N.J. 122, 134 (2009)), because the jury is presumed to follow the court's instructions, State v. Burns, 192 N.J. 312, 335 (2007).
>
> [State v. Gonzalez, 249 N.J. 612, 635 (2022) (first alteration in original).]

Here, defendant was charged with endangering the welfare of a child that prohibits:

> [a]ny person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who causes the child harm that would make the child an abused or neglected child . . . is guilty of a crime of the second degree.
>
> [N.J.S.A. 2C:24-4(a)(2).]

12

Defendant argues Dr. Kairys impermissibly opined on the "only contested issue that the jury was required to consider in this case: whether [defendant] was guilty of child abuse." Defendant contends a mistrial was the only remedy that could cure the alleged prejudice because this statement told the jury that the expert believed defendant was guilty.

N.J.R.E. 704 provides expert testimony "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, where the ultimate issue testimony by an expert is "tantamount to a legal conclusion," it "usurp[s] the jury's singular role in the determination of [a] defendant's guilt and irredeemably taint[s] the remaining trial proofs." State v. Reeds, 197 N.J. 280, 297, 300 (2009). As such, expert witnesses should "avoid use of precise terminology found in the [charged] statute." State v. Cain, 224 N.J. 410, 424 (2016) (quoting State v. Nesbitt, 185 N.J. 504, 508 (2006)). Similarly, experts should be forbidden from expressing a "direct opinion on [] defendant's guilt or innocence" or providing an "opinion 'in such a way as to emphasize that the expert believes [] defendant is guilty of the crime charged under the statute.'" State v. Papasavvas, 163 N.J. 565, 612 (2000), opinion corrected, 164 N.J. 553 (2000) (quoting State v. Odom, 116 N.J. 65, 80 (1989), abrogated by State v.

Cain, 224 N.J. 410). "Expert testimony that recites the legal conclusion sought in a verdict is not helpful to the jury." Nesbitt, 185 N.J. at 517.

Here, Dr. Kairys had both factual knowledge from his physical examination of H.L. and was also qualified as an expert in the field of child abuse. In analyzing the Herbert factors, we conclude the trial judge did not misapply her discretion when she denied defendant's mistrial motion.

First, Dr. Kairys' testimony did not speak to the ultimate issue to be decided by the jury. Rather, the testimony was apropos to only one factor of the entire question to be answered by the jury. Second, the judge immediately gave a curative instruction to the jury and reiterated that it was the jury exclusively to ultimately determine if the State met its burden of proof that defendant endangered H.L. Finally, the jury would have been able to conclude the fact defendant endangered H.L. independent of Dr. Kairys' testimony because of the strength of the other witnesses' testimony combined with the overwhelming photographic evidence.

## B.

Defendant contends the prosecutor, during summation, improperly bolstered the credibility of the witnesses, attempted to inflame the emotions of

the jury by asking them to put themselves in H.L.'s position, and commented on facts not in evidence. We disagree.

Prosecutors "make vigorous and forceful closing arguments to juries," and are "afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. McNeil-Thomas, 238 N.J. 256, 275 (2019) (quoting State v. Frost, 158 N.J. 76, 82 (1999)). "In deciding whether prosecutorial conduct deprived a defendant of a fair trial, 'an appellate court must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" State v. Williams, 244 N.J. 592, 608 (2021) (quoting Frost, 158 N.J. at 83). "Factors to be considered in making that decision include, '(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.'" Ibid. (quoting Frost, 158 N.J. at 83). "In reviewing closing arguments, we look, not to isolated remarks, but to the summation as a whole." State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008) (citing State v. Carter, 91 N.J. 86, 105 (1982)).

A-3981-22

Reversal is only warranted if "the severity of the misconduct and its prejudicial effect . . . deprive[d] defendant of a fair trial." State v. Wakefield, 190 N.J. 397, 437 (2007) (quoting Papasavvas, 163 N.J. at 625). Failure by counsel to object to comments made at trial "is a sign 'that defense counsel did not believe the remarks were prejudicial' when they were made." State v. Pressley, 232 N.J. 587, 594 (2018) (quoting State v. Echols, 199 N.J. 344, 360 (2009)). "Every prosecutorial misstep [in summation] will not warrant a new trial." State v. Garcia, 245 N.J. 412, 436 (2021).

Guided by these standards, we are not convinced the prosecutor's remarks during summation deprived defendant of a fair trial. We find none of the challenged remarks by the prosecutor, whether objected to or not, amount to error, much less "misconduct" so egregious as to deprive defendant of a fair trial. The remarks were firmly grounded in the evidentiary record, constituted fair comment on the evidence, or consisted of permissible inferences based on common knowledge.

Specifically, defendant alleges that the prosecutor improperly bolstered the credibility of Wirth (H.L.'s school counselor) and M.P. (H.L.'s foster mother) by stating, "[t]hese are individuals who had dedicated their lives to protecting children." Defendant did not object to this statement. While we

neither condone nor endorse the State's comment, it did not constitute error. Rather, this observation was based squarely on the unrefuted evidence adduced at trial, namely that Wirth had over twenty years' experience and M.P. had cared for over 100 foster children over twenty-five years. As such, the statement represented a fair comment on the evidence and not an expression of personal opinion. These challenged remarks did not exceed the boundaries of permissible argument, nor did they constitute the kind of egregious conduct necessary to undermine confidence in the verdict.

Next, defendant contends the prosecutor's rhetorical invitation to the jury to consider H.L.'s position improperly played on the jury's emotions. We disagree. Appeals to emotion only merit reversal if they divert the jury from a fair and impartial consideration of the evidence. See State v. Marshall, 123 N.J. 1, 160-61 (1991), supplemented, 130 N.J. 109 (1992). Here, any such argument was brief and isolated, the other evidence was particularly overwhelming including the testimony of both expert and lay witnesses and over ninety photographs documenting the victim's injuries and living conditions.

Finally, defendant objects to the prosecutor's reference to H.L.'s mouth healing capability and characterization of the abuse as "wholeheartedly

mental," arguing these statements were unsupported by expert testimony. It is well-recognized that a prosecutor is permitted to make arguments based on common knowledge and make reasonable inferences from admissible evidence. See State v. Morton, 155 N.J. 383, 457-58 (1998).

Therefore, given the copious evidence of guilt combined with the absence of any contemporaneous objection or defendant's request for curative instructions, the remarks do not rise to the level of reversible error.

C.

Finally, defendant argues the sentencing court relied on inappropriate aggravating factors when it imposed an eight-year prison term for the endangering conviction. We disagree.

We review sentences giving substantial deference to the sentencing judge. State v. Fuentes, 217 N.J. 57, 70 (2014). To that end, we are mindful we should "not 'substitute [our] judgment for [that] of our sentencing courts[.]'" State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)). Therefore, we must affirm a sentence "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based on competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case

18

'shock[s] the judicial conscience.'"  State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). Sentencing courts are, however, "cautioned to avoid 'double counting' circumstances that the Legislature has already incorporated as an element of the offense."  State v. Lawless, 214 N.J. 594, 608 (2013).

Here, the judge engaged in a comprehensive analysis to consider, determine, and balance the pertinent aggravating and mitigating factors.  We affirm the trial court's determination that the eight-year sentence imposed was appropriate and fully supported by the record.  As the sentencing judge meticulously set forth, the aggravating factors — particularly factors one, two, three, and nine — preponderate over the absence of any mitigating factors and amply justify the sentence.

In finding aggravating factor one, N.J.S.A. 2C:44-1(a)(1), the court considered "the nature and circumstances of the offense, the role of the actor therein including whether or not it was committed in an especially heinous, cruel, or depraved manner."  The judge placed substantial weight on this factor, noting that the harm defendant inflicted upon H.L. spanned numerous acts on various dates.  The judge also highlighted the biological connection

between defendant and H.L. and the actions that she took against him as his mother were "particularly cruel."

Aggravating factor two was considered for "the gravity and seriousness of harm inflicted on the victim" and contemplated whether defendant "knew or reasonably should have known that the victim of the offense was particularly vulnerable or [in]capable of resistance due to advanced age, ill health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance." N.J.S.A. 2C:44-1(a)(2). The judge weighed this factor substantially as well, concluding the victim was "particularly vulnerable as a seven and eight year old" child.

The judge found aggravating factor three held some weight because of the separate offenses defendant committed "after these events while she was out on bail[,] she committed the offenses to which she pleaded guilty."

The judge also placed substantial weight on aggravating factor nine, the "need to deter[] the defendant and others from violating the law."

Although the judge considered the argument of defense counsel to the presence of mitigating factors, she did not find they were supported by the evidence.

At bottom, we conclude the judge properly exercised her discretion in imposing the eight-year prison term. The record does not reveal the court engaged in any impermissible double counting. The judge properly applied the sentencing guidelines under the Criminal Code and the sentence imposed does not shock the judicial conscience.

We affirm defendant's conviction and sentence. To the extent we have not specifically addressed any remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division